Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 5, 2018

**2018 CO 8**

**No. 17SC412, <u>People in Interest of C.W.B., Jr.</u>—Children's Code—Dependency or Neglect Proceedings—Standing on Appeal.**

The supreme court reviews whether the foster parents here have standing to appeal the trial court's denial of a motion to terminate the parent-child legal relationship. The foster parents intervened in the trial court proceedings pursuant to section 19-3-507(5)(a), C.R.S. (2017), and participated in a hearing on the GAL's motion to terminate the parent-child legal relationship between the mother and the child. The trial court denied the motion. Neither the State nor the GAL appealed the trial court's ruling, but the foster parents did. The court of appeals concluded that the foster parents had standing to appeal the trial court's ruling.

The supreme court holds that the foster parents here do not have a legally protected interest in the outcome of termination proceedings, and that section 19-3-507(5)(a) does not automatically confer standing on them to appeal the juvenile court's order denying the termination motion, where neither the Department nor the GAL sought review of the trial court's ruling. And because the GAL is statutorily obligated to advocate for the best interests of the child, including on appeal, there is no

need to confer standing on foster parents here to represent the best interests of the child on appeal.  The supreme court  therefore reverses the judgment of the court of appeals and remands the case with instructions to dismiss the appeal.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 8

### Supreme Court Case No. 17SC412
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 16CA860

### Petitioner:

C.W.B., Jr., by and through his Guardian Ad Litem,

v.

### Respondents:

A.S. and J.S.,

### and Concerning

The People of the State of Colorado, and M.A.S.

### Judgment Reversed
*en banc*
February 5, 2018

**Attorneys for Petitioner:**
Robert G. Tweedell, Guardian ad Litem
  *Delta, Colorado*

Anna Ulrich, Guardian ad Litem
  *Saguache, Colorado*

**Attorney for Amicus Curiae Colorado Office of the Child's Representative:**
Sheri M. Danz
  *Denver, Colorado*

**Attorney for Amicus Curiae Office of Respondent Parents' Counsel:**
Ruchi Kapoor
  *Denver, Colorado*

No appearance on behalf of Respondents.

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**CHIEF JUSTICE RICE** dissents, and **JUSTICE COATS** joins in the dissent.

¶1 In this dependency and neglect case, respondents are foster parents who intervened in the trial court proceedings pursuant to section 19-3-507(5)(a), C.R.S. (2017), and participated in a hearing on the guardian ad litem's ("GAL") motion to terminate the parent-child legal relationship between the mother and the child. The trial court denied the motion. Neither the Department nor the GAL appealed the trial court's ruling. Instead, the foster parents appealed, seeking to reverse the trial court's order. The narrow question before us is whether the foster parents had standing to appeal the trial court's ruling. The court of appeals concluded they did. We granted the GAL's petition for a writ of certiorari to review the court of appeals' decision and now reverse.[1]

¶2 We hold that, although section 19-3-507(5)(a) permits foster parents to intervene in dependency and neglect proceedings following adjudication, foster parents here do not have a legally protected interest in the outcome of termination proceedings, and section 19-3-507(5)(a) does not automatically confer standing to them to appeal the juvenile court's order denying the termination motion at issue, where neither the

---

[1] We granted certiorari to review the following issues:

1. Whether foster parents who have intervened in a dependency and neglect action have standing to appeal a trial court's grant or denial of a motion for termination of the parent–child relationship.

2. Whether foster parents who have intervened in a dependency and neglect action can represent the best interests of the child on appeal.

Department nor the GAL sought review of the trial court's ruling. Moreover, because the GAL is statutorily obligated to advocate for the best interests of the child, including on appeal, there is no need to confer standing on foster parents to represent the best interests of the child on appeal. Accordingly, we reverse the judgment of the court of appeals and remand the case with instructions to dismiss the appeal.

## I. Facts and Procedural History

¶3 When C.W.B., Jr. was four weeks old, he underwent open heart surgery. At a follow-up appointment six weeks later, doctors discovered fractures to his femur and skull—injuries consistent with child abuse. The hospital contacted the Montezuma County Department of Social Services ("the Department"), and the Department filed a petition in dependency and neglect on June 24, 2014. The trial court granted temporary custody of C.W.B., Jr. to the Department and the Department eventually placed him with foster parents, J.S. and A.S. C.W.B., Jr.'s mother ("Mother") and father ("Father") both admitted that the child was dependent or neglected pursuant to section 19-3-102(1)(c), C.R.S. (2017), due to an injurious environment. The trial court then adjudicated the child as dependent or neglected and adopted treatment plans for both parents.

¶4 Father was later arrested for child abuse charges and pled guilty to one felony count of child abuse. The Department moved to terminate Father's parental rights. The trial court granted the motion after a hearing in February 2016. Father is not a party to

4

this appeal and Father's parent-child legal relationship with C.W.B., Jr. is not at issue in this case.

¶5   Mother initially had some trouble complying with her treatment plan, and by late September 2014, the trial court had changed the permanency plan to adoption with the concurrent plan of family reunification. However, throughout early 2015, Mother began to participate more consistently in the treatments outlined in her treatment plan.

¶6   Meanwhile, in April 2015, the foster parents moved to intervene in the dependency and neglect proceedings under section 19-3-507(5)(a). The trial court granted the motion and allowed the foster parents to participate as intervenors.

¶7   Mother continued to work on her treatment plan, and in June 2015, she moved to change the permanency goal back to reunification. At a permanency hearing in October 2015, the court ordered more frequent visitations for Mother but did not formally change the permanency plan. However, in November 2015, the Department reported that Mother had successfully completed her treatment plan and requested that the permanency goal be changed from adoption back to reunification within six months, by March 2016.

¶8   In December 2015, the Department filed an update with the court in which it proposed that C.W.B., Jr. be moved to a new foster home closer to Mother's residence to facilitate visits with her. The Department also expressed concern that the current foster parents appeared to present a conflict with the Department's requested goal of

reunification because they were too attached to the child and "want[ed] adoption to happen for them."

¶9    Later that month, the GAL moved to terminate Mother's parental rights, contending that she had not complied with her treatment plan and was an unfit parent. Nevertheless, in mid-January 2016, the trial court modified the permanency goal back to reunification and ordered overnight visits with Mother.

¶10    After a two-day hearing in April 2016, the trial court denied the motion to terminate Mother's parental rights, ultimately finding that Mother had reasonably complied with the treatment plan and that the GAL had failed to prove that she was an unfit parent. Neither the Department nor the GAL appealed the trial court's decision.

¶11    Instead, the foster parents, in their role as intervenors in the dependency and neglect case, and acting alone, filed an appeal in the court of appeals, seeking reversal of the trial court's order denying the motion to terminate Mother's parental rights. The Department filed a brief in response, asking the court of appeals to uphold the trial court's order.[2]

¶12    After reviewing the foster parents' petition on appeal, the court of appeals issued an order to show cause why the appeal should not be dismissed for lack of standing. In response, the foster parents argued that they had standing to appeal under section

---

[2] The GAL initially filed a notice of cross-appeal but later filed a notice stating that it did not intend to file a petition on appeal.

6

19-3-507(5)(a) and this court's decision in A.M. v. A.C., 2013 CO 16, ¶ 40, 296 P.3d 1026, 1038, which held that "foster parents who meet the required statutory criteria to intervene may participate fully in the termination hearing without limitation." The court of appeals subsequently ordered supplemental briefing on the standing issue. In their supplemental brief, the foster parents argued that they had standing to appeal because they had been made a party to the case under section 19-3-507(5)(a) and that no party currently represented the child's best interests because the GAL had not filed an appeal. The GAL and Office of the Child's Representative filed supplemental briefs opposing the foster parents' standing to appeal, arguing that the GAL has exclusive statutory authority to represent the child's best interests.

¶13    In a published, split decision, the court of appeals affirmed the trial court's order denying the termination motion. People in Interest of C.W.B., Jr., 2017 COA 68, __ P.3d __. Relevant here, the panel majority held that the foster parents had standing to appeal the trial court's order denying the termination motion. Id. at ¶¶ 9–19. It reasoned that the foster parents suffered an injury in fact "inasmuch as they were arguably positioned to adopt the child in the event the mother's parental rights had been terminated." Id. at ¶ 14. The majority concluded that this injury was to a legally protected interest because section 19-3-507(5)(a) allows foster parents to intervene in the dependency and neglect proceedings as a matter of right, and it inferred from this court's decision in A.M. that "the statute gives qualifying foster parents a right to represent the best interests of the child, and therefore a stake in the outcome of the

7

controversy." Id. at ¶¶ 16–17.  On the merits, the panel majority nevertheless upheld the trial court's order, concluding that the trial court applied the correct legal standard in denying the termination motion and that the trial court's findings adequately supported its order.  Id. at ¶¶ 31, 39.

¶14     Judge Harris dissented, concluding that the foster parents did not have standing to appeal.  Id. at ¶ 42 (Harris, J., dissenting).  Judge Harris acknowledged that the foster parents had a statutory right under section 19-3-507(5)(a) to intervene in the dependency and neglect proceedings pending before the trial court.  However, she reasoned, section 19-3-507(5)(a) does not automatically confer standing to appeal the outcome of those proceedings.  Id. at ¶¶ 57–58.  Rather, section 19-3-507(5)(a) confers only a procedural right to participate in the proceedings.  Id. at ¶¶ 62–63, 65.  Because the foster parents participated fully in the hearing on the termination motion, Judge Harris concluded that they suffered no injury and therefore lacked standing to appeal. Id. at ¶ 66.  Judge Harris further concluded that section 19-3-507(5)(a) does not give foster parents standing to assert the best interests of the child on appeal and she disagreed with the panel majority's reliance on this court's decision in A.M. to conclude otherwise.  Id. at ¶¶ 71, 80, 82.

¶15 We granted the GAL's petition for a writ of certiorari to review the court of appeals' ruling that the foster parents had standing to appeal the trial court's order.[3]

## II. Standard of Review

¶16 Whether a party has standing to proceed is a question of law this court reviews de novo. Hickenlooper v. Freedom from Religion Found., Inc., 2014 CO 77, ¶ 7, 338 P.3d 1002, 1006; Ainscough v. Owens, 90 P.3d 851, 856 (Colo. 2004). Standing is a jurisdictional prerequisite that may be raised at any stage of the proceeding. Freedom from Religion Found., Inc., ¶ 7, 338 P.3d at 1006.

## III. Analysis

¶17 We first review Colorado's standing doctrine relevant to our inquiry in this case. Next, we explain the statutory framework in which dependency and neglect cases proceed, and the rights and duties those statutes confer on the parties involved in the case. Finally, with these principles in mind, we conclude that the foster parents here do not have standing to appeal because they have not suffered an injury in fact to a legally protected interest as a result of the trial court's order. Although section 19-3-507(5)(a) gives qualifying foster parents the right to intervene in dependency and neglect proceedings, the foster parents here do not have a legally protected interest in the

---

[3] Although the foster parent intervenors filed an opposition to the GAL's petition for certiorari, they did not cross petition this court for review of the court of appeals' judgment affirming the trial court's order. Thus, the merits of the trial court's ruling denying the motion to terminate are not before us.

9

outcome of termination proceedings, and section 19-3-507(5)(a) does not automatically confer standing to them to appeal the juvenile court's order denying the termination motion at issue, where neither the Department nor the GAL sought review of the trial court's ruling. Nor is it necessary to allow foster parents to assert the best interests of the child on appeal, because the Children's Code expressly charges the GAL with doing so. For these reasons, we hold that the foster parents here did not have standing to appeal the trial court's ruling denying the GAL's motion to terminate the mother's parental rights.

## A. Standing Doctrine

¶18 Colorado's standing requirement embraces both constitutional and prudential concerns. City of Greenwood Vill. v. Petitioners for Proposed City of Centennial, 3 P.3d 427, 436 (Colo. 2000).[4] The constitutional prong limits our inquiry to the resolution of actual controversies, whereas the prudential prong reflects considerations of judicial self-restraint. Id. at 436–37. To have standing, a plaintiff must have (1) suffered an injury in fact (2) to a legally protected interest. Ainscough, 90 P.3d at 855–56. The legally protected interest requirement—the prudential aspect of the standing inquiry— recognizes that "parties actually protected by a statute or constitutional provision are

[4] Colorado standing doctrine is rooted in our own constitution and rules of judicial self-governance and thus does not duplicate all the features of federal standing doctrine. However, because similar considerations underlie both Colorado and federal standing law, we frequently consult federal cases for persuasive authority. City of Greenwood Vill., 3 P.3d at 436 n.7.

generally best situated to vindicate their own rights." City of Greenwood Vill., 3 P.3d at 437. Except in certain limited circumstances, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." Hollingsworth v. Perry, 133 S. Ct. 2652, 2663 (2013) (quoting Powers v. Ohio, 499 U.S. 400, 410 (1991)).

¶19   Standing to intervene at the trial court level is not the same as standing to proceed on appeal.[5] See Diamond v. Charles, 476 U.S. 54, 68 (1986) ("[Petitioner's] status as an intervenor below, whether permissive or as of right, does not confer standing sufficient to keep the case alive in the absence of the State on this appeal."). The interests asserted by a party seeking to intervene before a trial court may be insufficient to confer standing to continue a suit on appeal. See id.; Hollingsworth, 133 S. Ct. at 2661 (explaining that the standing requirement must be met by parties seeking appellate review, just as it must be met by parties seeking to appear before courts in the first instance). This court has stated that "[o]nly parties aggrieved may appeal." City & Cty. of Broomfield v. Farmers Reservoir & Irrigation Co., 235 P.3d 296, 302 (Colo. 2010) (quoting Miller v. Reeder, 401 P.2d 604, 605 (Colo. 1965)). "The word 'aggrieved' refers

---

[5] The foster parents' ability to intervene at the trial court level under C.R.C.P. 24(a)(1) is not at issue. Section 19-3-507(5)(a) grants qualifying foster parents a right to intervene in dependency and neglect proceedings at the trial court following adjudication of a child as dependent or neglected. We instead address whether the foster parent intervenors here have standing to appeal the trial court's ruling denying termination of Mother's parental rights, where neither the Department nor the GAL has sought review of the court's ruling.

11

to a substantial grievance; the denial to the party of some claim of right, either of property or of person, or the imposition upon him of some burden or obligation." Id. (quoting Miller, 401 P.2d at 605).

## B. Statutory Framework

¶20 This case requires us to determine whether the foster parents' right to intervene in dependency and neglect proceedings under section 19-3-507(5)(a) automatically confers standing to appeal the juvenile court's ruling denying termination of Mother's parental rights, where neither the Department nor the GAL has sought review of the court's ruling.

¶21 We begin by examining the relative duties and rights of the several parties to a dependency and neglect case.

## 1. The State

¶22 The provisions of Article 3 of the Children's Code are structured to allow the State, under its parens patriae authority, to intervene into the familial relationship where necessary to protect the welfare of children. See A.M., 296 P.3d at 1036; People in Interest of J.W., 2017 CO 105, ¶ 31, __ P.3d __. After a county department of human services or local law enforcement agency becomes aware of suspected child abuse or neglect, it must notify the juvenile court, which may then authorize the filing of a petition in dependency and neglect. §§ 19-3-312(1), -501, C.R.S. (2017). Thereafter, the People of the State of Colorado, through the relevant county department of human services, may file a petition in dependency and neglect under section 19-3-502, C.R.S.

(2017).  The State is the exclusive party entitled to bring an action in dependency and neglect.  McCall v. Dist. Ct., 651 P.2d 392, 394 (Colo. 1982).  At the adjudicatory hearing, the State must prove the allegations in the petition by a preponderance of the evidence, and if the State has done so, the court will sustain the petition and adjudicate the children as dependent or neglected. § 19-3-505(7), C.R.S. (2017).  The adjudication of a child as dependent or neglected permits state intervention into the familial relationship to protect the child and to provide rehabilitative services to the family.  J.W., ¶ 31.

¶23    If the child is adjudicated dependent or neglected, the juvenile court convenes a dispositional hearing and orders a treatment plan for the parent(s).  § 19-3-507, C.R.S (2017).  After ordering a treatment plan, it sets periodic review hearings to monitor the family's progress and assist in compliance with the treatment plan.  Because the State initiates the action in dependency and neglect, it has the authority to file a motion for termination of parental rights.  See § 19-3-502(1).  The juvenile court may terminate a parent's rights under Article 3 only in accordance with the provisions of section 19-3-604, C.R.S. (2017), which provides the criteria for termination, and only when all reasonable means of preserving the parent-child legal relationship have been unsuccessful.  See People In Interest of A.M.D., 648 P.2d 625, 640 (Colo. 1982).

## 2. The Guardian Ad Litem

¶24    The GAL plays a central role in the Article 3 dependency and neglect process. Relevant here, the GAL is statutorily obligated to advocate for the best interests of the child and is expressly authorized to participate at all steps of the legal proceedings,

13

including on appeal. When a petition is filed alleging abuse or neglect of a minor child, the juvenile court is required to appoint a GAL for the child. § 19-3-203(1), C.R.S. (2017). The GAL, who must be a licensed Colorado attorney, "shall be charged in general with the representation of the child's interests," and shall participate in juvenile court proceedings to the degree necessary to adequately represent the child's best interests. Id.; § 19-3-203(3); see also § 13-91-103(4), C.R.S. (2017) ("'GAL' means a person appointed by a court to act in the best interests of a child involved in a proceeding under title 19."). A GAL's responsibilities expressly include "appeal[ing] matters to the court of appeals or the supreme court." § 19-3-203(3). Additionally, the GAL may file a motion to terminate the parent–child legal relationship. People in Interest of M.N., 950 P.2d 674, 676 (Colo. App. 1997); see also A.M., ¶ 14, 296 P.3d at 1031.

### 3. Foster Parents

¶25 Foster parents' care of foster children is regulated by the Department. The foster parents' role is governed by their agreement with the Department to serve as foster parents and applicable regulations regarding the foster home environment. See Dep't of Human Servs. Regs. 7.708.3–.4, 12 Colo. Code Regs. 2509-8 (2017) (specifying rules for the care of foster children). After a child has been adjudicated dependent or neglected, section 19-3-507(5)(a) permits "foster parents who have the child in their care for more than three months" and who have information or knowledge concerning the care and protection of the child to intervene in pending dependency and neglect proceedings as a matter of right, with or without counsel. Additionally, under section 19-3-507(5)(b),

14

the Department is required to give foster parents providing care for the child "notice of any administrative review of the child's case." The juvenile court may determine that a child who is currently in a foster home, and for whom the foster parents are capable of providing a stable and permanent environment, shall not be removed from the foster parents' home if removal would be seriously detrimental to the emotional well-being of the child. § 19-3-702(5)(b), C.R.S. (2017).

## C. Discussion

¶26 Given this statutory framework, we conclude that the foster parents here lack standing to appeal the trial court's ruling because they have not suffered an injury in fact to a legally protected interest as a result of the trial court's denial of the termination motion. See Ainscough, 90 P.3d at 856; see also City & Cty. of Broomfield, 235 P.3d at 302. Nor is it necessary to allow foster parents to represent the best interests of the child in an appeal because the GAL is expressly authorized by the Children's Code to do so.

¶27 First, we disagree with the court of appeals that the foster parents have suffered an injury in fact "inasmuch as they were arguably positioned to adopt the child in the event that the mother's parental rights had been terminated." See C.W.B., Jr., ¶ 14. Article 5 of the Children's Code, sections 19-5-200.2 to -216, C.R.S. (2017), governs adoptions. Although the parent–child legal relationship must be terminated under either Article 3 or Article 5 before a child may be available for adoption, see § 19-5-203(1)(a), several additional events must occur before the juvenile court enters an adoption order. See §§ 19-5-206 to -211 (providing for a home placement, petition,

15

hearing, and court decree before any adoption is final); M.S. v. People, 2013 CO 35, ¶ 20, 303 P.3d 102, 107 (describing the necessary procedural steps that must occur before adopting a child, including entering into a preadoption agreement). Here, at the time of appeal, the foster parents' ability to adopt C.W.B., Jr. was speculative; numerous other steps and events would have been necessary before they could be considered positioned to adopt. A speculative injury does not satisfy the injury in fact requirement. See Carestream Health, Inc. v. Colo. Pub. Utilities Comm'n, 2017 CO 75, ¶ 31, 396 P.3d 669, 674.

¶28     More importantly, we conclude that foster parent intervenors here do not have a legally protected interest in the outcome of the termination hearing at the trial court sufficient to confer standing to appeal the court's order denying termination. We do not read section 19-3-507(5) to confer foster parents with an independent right to pursue termination of the parent-child legal relationship where the State and the GAL no longer seek to do so. The court of appeals' panel majority focused on our statement in A.M. that "[f]oster parents who meet the required statutory criteria to intervene may participate fully in the termination hearing without limitation," A.M., ¶ 20, 296 P.3d at 1033, and concluded this participation must include participation in appeals. See C.W.B., Jr., ¶ 17. We disagree.

¶29     We explained in A.M. that the State has a significant interest in promoting the welfare of children and ensuring that termination proceedings are accurate and just, and that this interest is best advanced by giving consideration to all relevant evidence,

whatever the source, including foster parents. See id. at ¶ 36, 296 P.3d at 1037. In other words, our holding in A.M. was based on the foster parent intervenors' ability to provide the court with valuable and current information about the children in their care, as evidenced by the statutory criteria allowing qualifying foster parents to intervene. See § 19-3-507(5)(a) (providing that "foster parents who have the child in their care for more than three months who have information or knowledge concerning the care and protection of the child may intervene") (emphasis added).

¶30 We explained that foster parents often have valuable information about the children in their care and that they are often uniquely positioned to provide a juvenile court with the most up-to-date status of the child. A.M., ¶ 35, 296 P.3d at 1036–37. We concluded that the "[e]xclusion of relevant information that foster parent intervenors might provide would therefore heighten, not mitigate, the risk of an erroneous decision at the termination hearing." Id. at ¶ 35, 296 P.3d at 1037. Indeed, in response to the contention that foster parents' full participation at a termination hearing would violate the biological parents' procedural due process rights, we observed that the foster parents' participation could decrease the risk of an erroneous termination decision by the juvenile court and thereby actually safeguard the biological parents' due process rights. Id.

¶31 Thus, we held in A.M. that qualifying foster parents are permitted to intervene without limitation and participate fully at the termination hearing because section 19-3-507(5)(a) implicitly recognizes that they have important information that will

17

improve the accuracy of the juvenile court's determination at the hearing, as evidenced by the statutory criteria for intervention.

¶32   Our decision in A.M. was also driven by the timing requirements for the dispositional hearing.   A.M., ¶ 19, 296 P.3d at 1032–33.   Under section 19-3-507(5)(a), only foster parents who have had the child in their care for more than three months (approximately ninety days) may intervene in ongoing proceedings.   However, under section 19-3-508, the court must hold a dispositional hearing within thirty days after the adjudication if the child is under six years of age, and within forty-five days if the child is over six.   A.M., ¶ 13, 296 P.3d at 1031.   Additionally, children under six years of age are subject to expedited placement procedures under section 19-1-102(1.6), making it unlikely that a dispositional hearing for a child under six would ever happen more than ninety days after a child had been placed in foster care.   Id. at ¶ 19, 296 P.3d at 1032. With this timing conundrum in mind, we observed that limiting foster parent intervenors' participation to the dispositional hearing would lead to an absurd result: "The General Assembly, having granted foster parents the ability to advocate for the child's best interests as intervenors, did not, in the same breath, confine that ability to a hearing in which there is no practical likelihood that foster parents would be able to participate." Id. at ¶ 19, 296 P.3d at 1033.

¶33   This statement, however, did not suggest that foster parents, as a matter of law, have a legally protected interest in a relationship with the foster child sufficient to confer them with an independent right to pursue termination of the parent-child legal

18

relationship where the State and the GAL no longer seek to do so. Several months after our decision in A.M., we considered whether the preadoptive foster parents in M.S. possessed a constitutionally protected liberty interest in their relationship with a foster child and concluded that they did not. M.S., ¶ 7, 303 P.3d at 104. We explained that, in that case, because no adoption proceeding had commenced, the dependency and neglect statutes governed the foster parents' liberty interest. Id. at ¶ 14, 303 P.3d at 105–06. After reviewing the foster parent provisions in Article 3, we concluded that these provisions were procedural rather than substantive because they did not guarantee a particular outcome. Id. at ¶ 15, 303 P.3d at 106.[6] Because the dependency and neglect statutes that pertain to foster parents do not mandate a particular substantive outcome, we concluded in M.S. that Colorado state law did not, as a matter of law, create a constitutionally protected liberty interest for preadoptive foster parents under the circumstances of that case. Id.

¶34 Our decisions about the participation of foster parents in dependency and neglect cases make clear that foster parents are statutorily permitted to intervene as a matter of right in dependency and neglect proceedings where the child has lived with them for at least three months because they have valuable, up-to-date information

---

[6] In M.S., we addressed the foster parents' interest in a continued relationship with the child there under the Article 3 dependency and neglect statutes because no adoption proceeding had commenced. We noted that, had the foster parents initiated an adoption proceeding, their claim of a liberty interest arguably could have been analyzed under the provisions of Article 5. M.S., ¶ 14 n.8, 303 P.3d at 105 n.8.

about the status of the child that can contribute to the accuracy and fairness of the termination decision. See A.M. ¶¶ 21–26, 35–37, 296 P.3d at 1034–37. However, foster parents do not have an interest, as a matter of law, in the outcome of the termination proceeding because the statutes governing their participation confer only procedural, rather than substantive, rights. See M.S., ¶¶ 14–15, 303 P.3d at 105–06. Our conclusion is reinforced by the fact that our statutes and case law indicate that both the Department and a GAL are authorized to file a motion to terminate parental rights, see § 19-3-502(1); M.N., 950 P.2d at 676, but nowhere suggest that foster parent intervenors are authorized to initiate termination proceedings. Cf. McCall, 651 P.2d at 394 (holding that the State is the exclusive party entitled to bring dependency and neglect proceedings and that the paternal grandmother of a child could not bring a petition in dependency or neglect on her own).

¶35 In sum, although section 19-3-507(5)(a) gives qualifying foster parents the right to intervene after adjudication, including at the termination hearing, it does not necessarily give them a stake in the outcome of the Article 3 proceedings, nor does it automatically confer standing on them, as a matter of law, to appeal the decision denying termination, at least not here, where neither the Department nor the GAL has sought review of the decision. Although we referred in A.M. to the foster parents' "ability to advocate for the child's best interest as intervenors," see A.M., ¶ 19, 296 P.3d at 1033, we did so in the context of explaining that foster parent participation advances the best interests of the child by providing up-to-date information about the child's

20

well-being and by promoting an accurate and just decision by the juvenile court regarding termination, see id. at ¶ 35, 296 P.3d at 1037. Indeed, all actions under the Children's Code should advance the best interests of the children involved. See, e.g., § 19-1-102, C.R.S. (2017) (addressing the best interests of the child and declaring that "the provisions of this title shall be liberally construed to serve the welfare of children").

¶36 Additionally, we need not confer standing to foster parents here to assert the rights of the child due to some existing barrier or difficulty in asserting the child's rights. See City of Greenwood Vill., 3 P.3d at 439–40. The GAL is expressly authorized by statute to advocate for the child's best interests at all stages of the proceedings, see § 19-3-203(3), and there is no indication that the GAL was unable or unwilling to do so in this case. Indeed, the GAL filed the termination motion. The GAL then chose not to appeal the trial court's denial of that motion. The GAL filed a supplemental brief on the issue of standing in the court of appeals, and participated fully at this court by filing the petition for review and a merits brief. Contrary to the foster parents' contention before the court of appeals, the GAL's decision not to pursue an appeal does not equate to a failure to represent the child's best interests. Like all attorneys in the state, a GAL is subject to the professional duties of diligence and competent representation. See Colo. R.P.C. 1.1, 1.3. Further, added safeguards exist to ensure GALs carry out their statutory duties effectively. See Chief Justice Directive 04-06 at 15 n.1 (revised Jan. 1, 2016) (providing that, if an issue arises regarding an attorney's ability to competently or adequately represent a child's best interest, the court shall immediately contact the

Office of the Child's Representative, which shall resolve the complaint, including through removal and replacement of the attorney).

¶37 Finally, the circumstances of this case illustrate the potential practical problems involved in allowing foster parents, acting alone, to appeal a trial court's ruling denying a motion to terminate parental rights. The record here indicates that the Department believed the foster parents in this case had become attached to the child and wanted to adopt, and thus had become an obstacle to the permanency goal of reunification. Under these circumstances, the foster parent intervenors arguably had a conflict of interest between the best interests of the child (as represented by the GAL) and their personal interests in wishing to adopt the child.

## IV. Conclusion

¶38 Section 19-3-507(5)(a) gives qualifying foster parents the right to intervene in dependency and neglect proceedings after adjudication and, as we held in A.M., to participate fully in the termination hearing. However, section 19-3-507(5)(a) does not necessarily give foster parents a legally protected interest in the outcome of termination proceedings. We conclude that section 19-3-507(5)(a) does not, as a matter of law, automatically confer standing to foster parents to appeal a juvenile court's ruling denying a motion to terminate parental rights, where neither the Department nor the GAL sought review of the trial court's ruling. We further conclude that the foster parents here have not established standing on the facts of this case. And because the GAL is statutorily obligated to advocate for the best interests of the child at all stages of

22

a proceeding, including on appeal, we discern no reason to confer upon foster parents the right to represent the best interests of the child on appeal. For these reasons, we reverse the judgment of the court of appeals and remand the case with instructions to dismiss the appeal.

**CHIEF JUSTICE RICE** dissents, and **JUSTICE COATS** joins in the dissent.

CHIEF JUSTICE RICE, dissenting.

¶39    The majority concludes that, when the General Assembly gave foster parents the unconditional right to intervene in dependency and neglect proceedings in section 19-3-507(5)(a), C.R.S. (2017), it intended for that right to extend only to the trial-level proceedings but not on appeal.  I cannot agree.  The majority's position is inconsistent with the plain language of section 19-3-507(5)(a) and our holding in A.M. v. A.C., 2013 CO 16, 296 P.3d 1026, and destroys the procedural mechanism of C.R.C.P. 24(a)(1).  The majority holds that, "although section 19-3-507(5)(a) permits foster parents to intervene in dependency and neglect proceedings following adjudication, foster parents do not have a legally protected interest in the outcome of termination proceedings, and section 19-3-507(5)(a) does not automatically confer standing to them to appeal . . . ."  Maj. op. ¶ 2.  I recognize that standing is a jurisdictional prerequisite to any appeal, see O'Bryant v. Pub. Util. Comm'n, 778 P.2d 648, 652 (Colo. 1989), but section 19-3-507(5)(a) satisfies that requirement.  That is, just as the statute permits foster parents to intervene at the trial-level dependency and neglect proceedings and participate fully without satisfying Colorado's traditional standing requirements, it also confers standing on the foster parents to appeal a juvenile court's order denying a motion to terminate a parent-child legal relationship regardless of whether the State or the guardian ad litem ("GAL") appeals.  Accordingly, I would hold that parties who enter a lawsuit pursuant to an unconditional statutory right to intervene—like the foster parents here—need not prove a direct interest in the litigation to participate fully at the trial level or on appeal because

1

the legislature has already declared their interest sufficient for standing purposes. For these reasons, I respectfully dissent.

## I. Section 19-3-507(5)(a) Confers Standing Upon Qualifying Parties at all Stages of Litigation

¶40 First, the plain language of section 19-3-507(5)(a), as we interpreted it in A.M., expresses the General Assembly's intent that qualifying foster parents be permitted to participate fully at all stages of litigation. The majority concludes that, because section 19-3-507(5)(a) does not include specific language conferring the right to appeal, the intervening foster parents do not have that right. That logic is backwards and conflicts with our interpretation of section 19-3-507(5)(a) in A.M. A statutory right to intervene is full and unlimited unless it is specifically limited by statute. See A.M., ¶ 20, 296 P.3d at 1033. In A.M.—which the majority does not overrule—we held that, because section 19-3-507(5)(a) "does not contain any explicit limit to the rights of intervenors, nor does it limit the substance of intervenor participation," Id. at ¶ 17, 296 P.3d at 1032, the intervening foster parents "are afforded the same degree of participation as all other parties, and such participation is not limited to the dispositional hearing." Id. at ¶ 20, 296 P.3d at 1033. We held that the trial court "did not err in affording the foster parents full party status at the termination hearing" and that, "[a]s intervenors, the foster parents were properly permitted to make opening statements, cross-examine witnesses, introduce evidence, make evidentiary objections, and give closing argument." Id. at ¶ 39, 296 P.3d at 1037–38. We reasoned that, had the General Assembly intended to prevent foster parents from fully participating in trial-level

2

dependency and neglect proceedings, it would have limited their rights to those granted in section 19-3-502(7), which allows foster parents to participate in dependency and neglect proceedings only as non-party witnesses or observers. Id. at ¶ 25, 296 P.3d at 1034. Instead, we recognized that the General Assembly granted the additional right of intervention to foster parents who have the child in their care for more than three months and have knowledge concerning the care and protection of the child, meaning that qualifying foster parents who intervene pursuant to section 19-3-507(5)(a) obtain full party status. Id. at ¶ 39, 296 P.3d at 1037–38. Notably, our conclusion did not turn on whether the foster parents in A.M. had standing. To the contrary, our opinion implies that section 19-3-507(5)(a) confers standing upon qualifying individuals, allowing them to intervene at the trial level and participate fully without meeting traditional standing requirements.

¶41 The same reasoning that allowed us to conclude that the foster parents in A.M. could participate fully in the trial proceedings without meeting the traditional standing requirements applies to the foster parents' ability to appeal here. I would hold that, by granting the foster parents in this case the unconditional right to intervene, the General Assembly declares their interest sufficient for standing purposes both at the trial level and on appeal. The General Assembly does not explain in section 19-3-507(5)(a) its reasons for granting foster parents an unconditional right to intervene, but its decision to do so is instructive. Section 19-3-507(5)(a) gives qualifying foster parents the autonomy to intervene, with or without representation, on their own initiative and without permission from the State or the GAL. This suggests that the General

3

Assembly believed that foster parents who have had the child in their care for more than three months have a legitimate role to play in the termination proceedings separate from the interests represented by the State and the GAL. The majority admits that, as we explained in A.M., "the State has a significant interest in promoting the welfare of children and ensuring that termination proceedings are accurate and just, and that this interest is best advanced by giving consideration to all relevant evidence, whatever the source, including foster parents." Maj. op. ¶ 29. According to the majority, however, that interest ends with the trial court's decision regarding termination. I would hold that the State's interest in obtaining a just result in termination hearings continues throughout all stages of the litigation and so too does the foster parents' right to participate. This is a logical extension of our holding in A.M. Just as qualifying foster parent intervenors have the unconditional statutory right to participate without limitation in trial-level dependency and neglect proceedings, so too may they appeal the result of those proceedings.

¶42 Additionally, the majority suggests that, because the GAL is statutorily obligated to advocate for the child's best interests at all stages of the litigation, "we need not confer standing to foster parents here to assert the rights of the child." Maj. op. ¶ 36. But that is not our decision to make. In addition to providing statutory duties for GALs, the General Assembly chose to confer standing on individuals who meet the requirements of section 19-3-507(5)(a) so that they may participate in all stages of dependency and neglect proceedings. We may not second-guess that decision.

4

¶43 The majority also relies on <u>Diamond v. Charles</u>, 476 U.S. 54 (1986), for the proposition that intervenors must meet traditional standing requirements to appeal. Maj. op. ¶ 19 (quoting <u>Diamond</u>, 476 U.S. at 68) ("[Petitioner's] status as an intervenor below, whether permissive or as of right, does not confer standing sufficient to keep the case alive in the absence of the State on this appeal."). That reliance is misplaced because <u>Diamond</u> did not involve litigants intervening pursuant to an unconditional statutory right. <u>Diamond</u>, 476 U.S. at 68 (discussing F.R.C.P. 24(a)(2) in its holding that the intervenor—whether intervening permissively or as of right—could not appeal without demonstrating Art. III standing). F.R.C.P. 24(a)(2) permits a party to intervene only if they can demonstrate that they claim an "interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." The language of F.R.C.P. 24(a)(2) resembles the requirements of Article III standing.[1] As a result, the U.S. Supreme Court has held that a litigant seeking to intervene as of right under Rule 24(a)(2) "must meet the [standing] requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff." <u>Town of Chester, N.Y. v. Laroe Estates, Inc.</u>, __ U.S. __, 137 S. Ct. 1645, 1648 (2017). Applying similar reasoning, <u>Diamond</u> requires litigants who intervene in the absence of a statutory grant to demonstrate Article III standing to appeal.

---

[1] Colorado's Rule 24(a)(2) is identical to the federal rule.

5

¶44     The majority assumes without explanation that parties intervening as a matter of right pursuant to C.R.C.P. 24(a)(1), as the foster parents did here, must satisfy Colorado's traditional requirements for standing in order to appeal. Unlike what the U.S. Supreme Court has done with F.R.C.P. 24(a)(2)—requiring Article III standing to enter the case at the trial level and to appeal[2]—the majority splits the baby, requiring intervenors to demonstrate standing to appeal but not to appear before the trial court. That holding is unprecedented. Neither this court nor the U.S. Supreme Court has held that parties with an unconditional statutory right to intervene must satisfy the traditional standing requirements at either the trial court or on appeal. To the contrary, such a requirement renders C.R.C.P. 24(a)(1) moot and prevents the General Assembly from conferring the right to intervene on parties it considers to have a legitimate stake in a case. The majority treats the foster parent intervenors here as though they intervened under C.R.C.P. 24(a)(2) and must continually prove their stake in the case. A right to intervene pursuant to statute is different in kind and should be treated differently than a right to intervene under C.R.C.P. 24(a)(2). In the latter circumstance, a litigant proves to the court that they deserve to be a party to a case; in the former

---

[2] See Town of Chester, 137 S. Ct. at 1648 (holding that a litigant seeking to intervene in the trial court under Rule 24(a)(2) "must meet the [standing] requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff) and United States v. Windsor, 570 U.S. 744, 133 S. Ct. 2675, 2688 (2013) (holding that a party that intervened pursuant to F.R.C.P. 24(a)(2) could appeal because it met Article III's standing requirements).

6

circumstance, the General Assembly determines that a litigant deserves to be a party to a case. Requiring all intervenors to meet Colorado's standing requirements on appeal, as the majority does, renders C.R.C.P. 24(a)(1) and (a)(2) identical procedural mechanisms. I would hold that intervenors entering a case pursuant to C.R.C.P. 24(a)(1) have standing to participate fully at trial and on appeal because the legislature has declared their interest sufficient for standing purposes.

## II. Foster Parents Satisfy Standing Requirements

¶45    Finally, even assuming that section 19-3-507(5)(a) does not confer standing on the foster parents such that they must demonstrate that they have (1) suffered an injury in fact (2) to a legally protected interest, I would agree with the majority of the court of appeals which determined that the foster parents had standing to appeal the denial of the GAL's motion. The foster parents suffered an injury in fact "inasmuch as they were arguably positioned to adopt the child in the event the mother's parental rights had been terminated." People in Interest of C.W.B., Jr., 2017 COA 68, ¶ 14, __ P.3d __. Further, that injury was to a legally protected interest because, pursuant to our decision in A.M., foster parents who meet section 19-3-507(5)(a)'s preconditions have "a right to represent the best interests of the child, and therefore a stake in the outcome of the controversy." C.W.B., Jr., ¶¶ 15, 17.

¶46    For the foregoing reasons, I respectfully dissent.


I am authorized to state that JUSTICE COATS joins in this dissent.

7