24CA1572 Swift v McLean 06-12-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1572
Jefferson County District Court No. 23CV31576
Honorable Chantel Contiguglia, Judge

---

Swift Financial, LLC, as servicing agent for WebBank, a Delaware limited
liability company,

Plaintiff-Appellee,

v.

Julie McLean,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 12, 2025

---

Wadsworth Garber Warner Conrardy, P.C., Aaron A. Garber, Hallie S. Cooper,
Littleton, Colorado, for Plaintiff-Appellee

Julie McLean, Pro Se

¶ 1    In this fraudulent transfer case, defendant, Julie McLean, appeals the district court's order granting summary judgment in favor of plaintiff, Swift Financial, LLC (Swift). The court determined that Julie McLean engaged in a fraudulent transfer of her residence to shield it from Swift's collection efforts against her then spouse, Seth McLean, f/k/a Seth Bouton.[1] We affirm.

## I.    Background

¶ 2    In 2018, Seth entered into a loan agreement with Swift to borrow $95,000. The agreement included an arbitration provision that allowed either party to pursue claims through binding arbitration. Seth eventually defaulted on the loan, and Swift began collection efforts. Swift first initiated an arbitration proceeding and was awarded $84,052.97 after Seth failed to participate. On April 1, 2022, the Denver District Court entered an order confirming the arbitration award. But Swift was unable to collect in full.

¶ 3    Swift later investigated the possibility of collecting against Seth's residence. In April 2023, Swift issued a subpoena to Julie to

---

[1] Because this case involves two people with the last name McLean, we use their first names when referring to them individually. We mean no disrespect in doing so.

produce documents and testify at a C.R.C.P. 69 hearing. Julie asked the court to quash the subpoena, arguing that the residence she shared with Seth was in her "name only and does not belong to Seth" and that he was merely a cosigner on the home purchase. Julie's assertion contradicted Jefferson County property records showing that Seth and Julie purchased the residence together as joint tenants in 2021. Shortly before Julie's request to quash the subpoena, Seth transferred his one-half interest in the residence to Julie for ten dollars via quitclaim deed.

¶ 4     In November 2023, Swift filed this case in the Jefferson County District Court against Seth and Julie, alleging that Seth fraudulently transferred his one-half interest in the residence to Julie. Seth failed to answer, resulting in the court entering default judgment against him. For her part, Julie filed an answer in which she denied that the transfer was for fraudulent purposes.

¶ 5     During discovery, Swift propounded requests for admission on Julie, asking her to admit, among other things, that (1) she and Seth purchased their home together as joint tenants in 2021; (2) Seth transferred his interest in the residence to her via quitclaim deed in May 2023 for ten dollars; (3) she knew about Swift's

2

judgment against Seth and its collection efforts at the time of the transfer; and (4) she caused the transfer to occur because she didn't want Swift to collect on its judgment. Julie never responded to the requests for admission, resulting in the court deeming them admitted under C.R.C.P. 36(a).

¶ 6    After Swift moved for summary judgment against Julie based on her admissions, Julie responded by submitting an unsigned affidavit in which she again denied that Seth's transfer was for fraudulent purposes. The court granted Swift summary judgment, concluding that Julie fraudulently executed the quitclaim deed with actual intent to hinder, delay, or defraud Swift's collection efforts against Seth. *See* §§ 38-8-105(1)(a), -108(1)(c), C.R.S. 2024.

¶ 7    Julie now appeals. She contends that the district court erred by (1) not considering her unsigned affidavit and (2) granting Swift summary judgment despite Swift's failure to properly serve the notice of arbitration on Seth. We disagree.

## II.    Unsigned Affidavit

¶ 8    Julie first contends that the district court erred by not considering her unsigned affidavit when evaluating Swift's motion

for summary judgment. She also argues, in the alternative, that the court should have advised her that she needed to sign the affidavit.

¶ 9　　We review a trial court's order granting summary judgment de novo. *Lewis v. Taylor*, 2018 CO 76, ¶ 9. Under C.R.C.P. 56(e), all papers supporting or opposing summary judgment must be "[s]worn or certified." *See also Cody Park Prop. Owners' Ass'n v. Harder*, 251 P.3d 1, 4 (Colo. App. 2009) ("A court must disregard documents referred to in a motion for summary judgment that are not sworn or certified.").

¶ 10　　For three reasons, we perceive no error in the court's decision granting summary judgment to Swift. First, Julie didn't attest to the statements in her unsigned affidavit under oath as required by C.R.C.P. 56(e). As a result, the statements were insufficient to raise a disputed issue of material fact that might have precluded summary judgment. *See Credit Serv. Co. v. Dauwe*, 134 P.3d 444, 446-47 (Colo. App. 2005); *see also Otani v. Dist. Ct.*, 662 P.2d 1088, 1090 (Colo. 1983) ("An affidavit is a *signed*, written statement, made under oath before an authorized officer, in which the affiant vouches that what is said is true.") (emphasis added).

¶ 11    Second, the court said that it would have reached the same result even if it considered Julie's unsigned affidavit. Yet Julie makes no argument challenging this alternative rationale for granting Swift summary judgment. *See IBC Denver II, LLC v. City of Wheat Ridge*, 183 P.3d 714, 717-18 (Colo. App. 2008) (when a lower tribunal gives more than one reason for a decision, an appellant must challenge all those reasons on appeal).

¶ 12    Third, contrary to Julie's argument that the court should have advised her to sign the affidavit, courts can't provide legal advice to litigants. *See Crumb v. People*, 230 P.3d 726, 732 (Colo. 2010). While we recognize that Julie was proceeding without counsel, unrepresented litigants remain subject to the same procedural rules that govern attorneys. *See Adams v. Sagee*, 2017 COA 133, ¶ 10.

¶ 13    Accordingly, the district court didn't err by declining to consider Julie's unsigned affidavit or by failing to advise her to sign the affidavit as required under C.R.C.P. 56(e).

### III.    Improper Service

¶ 14    Julie also contends that the district court erred by granting summary judgment to Swift because Swift failed to properly serve Seth with the notice of arbitration. We conclude Julie lacks

standing to assert this challenge, and, in any event, her challenge is untimely.

¶ 15     To have standing, a litigant must generally assert their own rights and interests and can't rest a claim for relief based on the legal rights or interests of a third party. *C.W.B., Jr. v. A.S.*, 2018 CO 8, ¶ 18. Whether a party has standing is a question of law that we review de novo. *Id.* at ¶ 16.

¶ 16     Julie doesn't assert that she was a party to either the loan agreement or the arbitration proceedings. Indeed, the record confirms that Seth, not Julie, entered into the loan agreement with Swift and was named as a party to the arbitration. Therefore, whether Swift failed to properly serve the notice of arbitration is an argument that is available only to Seth; Julie lacks standing to assert this argument. *See Bewley v. Semler*, 2018 CO 79, ¶ 16 ("Generally, only parties to a contract may seek to enforce its terms."); *Braata, Inc. v. Oneida Cold Storage Co., LLP*, 251 P.3d 584, 588 (Colo. App. 2010) ("Arbitration is a matter of contract . . . .").

¶ 17     We recognize that a litigant may, at times, assert the rights of a third party not before the court if they demonstrate both an injury to themselves and a "substantial relationship" with the third party.

6

*People v. Rosburg*, 805 P.2d 432, 435 (Colo. 1991). But even if Julie could take advantage of this exception, her challenge would still be untimely. The Denver District Court confirmed the arbitration award in Swift's favor on April 1, 2022. No one appealed that judgment, and Julie doesn't contend that Swift failed to properly serve Seth in the Denver District Court case. *See* C.A.R. 4(a)(1) (a notice of appeal must be filed with the appellate court within forty-nine days after entry of the order being appealed); *see also* § 13-22-228(1)(c), (1)(f), C.R.S. 2024 (authorizing litigants to appeal orders confirming arbitration awards and final judgments entered under the Uniform Arbitration Act).

¶ 18    Accordingly, because Julie lacks standing to challenge whether Swift properly served Seth in the arbitration proceedings and because her challenge would be untimely regardless, we perceive no basis to reverse.

## IV.   Disposition

¶ 19    We affirm the judgment.

JUDGE TOW and JUDGE YUN concur.