25CA1742 Peo in Interest of OC 03-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1742
Mesa County District Court No. 23JV99
Honorable Brian J. Flynn, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of O.C., a Child,

and Concerning J.C.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE TOW
Welling and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 19, 2026

---

Todd Starr, County Attorney, John Rhoads, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Josie Burt, Counsel for Youth, Glenwood Springs, Colorado, for O.C.

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1     J.C. (father) appeals the judgment terminating his parent-child legal relationship with O.C. (the youth).  Father contends that the juvenile court erred by finding that (1) he could not become fit within a reasonable time and (2) there was no less drastic alternative to termination.  We disagree and affirm the judgment.

## I.     Background

¶ 2     The Mesa County Department of Human Services filed a petition in dependency and neglect raising concerns that K.C. (mother) was subjecting the then-eleven-year-old youth to physical abuse.  Father, who had been convicted on two counts of sexual assault on a child involving different children, was serving an indeterminate prison sentence throughout the dependency and neglect action.  A protective order entered in his criminal case prevented him from having contact with the youth.

¶ 3     The juvenile court adjudicated the youth dependent and neglected and adopted a treatment plan for both parents.  The Department later moved to terminate both parents' parental rights.  Two years after the petition was filed, the juvenile court terminated mother's and father's parental rights following a contested hearing.  Mother does not participate in this appeal.

## II.     Fit Within a Reasonable Time

¶ 4     Father first contends that he "substantially complied" with his court-ordered treatment plan, and that the juvenile court failed to fully consider the "significant change" in his status during the course of the dependency and neglect action when it determined that he could not become fit within a reasonable time.  We are not persuaded.

### A.     Standard of Review and Applicable Law

¶ 5     We will not disturb a juvenile court's factual findings unless they are "so clearly erroneous as to find no support in the record." *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

¶ 6     An unfit parent is one whose conduct or condition renders them "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions."  § 19-3-604(2), C.R.S. 2025.  "In determining whether a parent's conduct or condition is likely to change within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social

history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24.

¶ 7     What constitutes a reasonable time is fact specific and must be determined by considering each particular child's physical, mental, and emotional conditions and needs. *Id.* at ¶ 25. A "reasonable time" is not an indefinite time. *Id.* And even when a parent has made recent progress on a treatment plan, the court is not required to give the parent additional time to comply. *See id.* at ¶¶ 24-25.

## B.     Analysis

¶ 8     The juvenile court found that father was not fit and was not likely to become fit within a reasonable period of time. The court found that father "continues to express his love for [the youth] and told the Court that he just wants the Court to order whatever is best for [the youth]." The court noted father's long-term incarceration and found that, because he was serving an indeterminate sentence, father "will be incarcerated for the foreseeable future." The court received a certified order from father's 2013 criminal case and noted that "as part of his sentence he is not allowed to have contact with anyone under eighteen years

of age," including the youth. The court found that this situation affected father's "fitness and his corresponding ability to meet [the youth]'s needs within a reasonable time."

¶ 9     The record supports these findings. Father testified that he was required to complete sex offense-specific treatment for his criminal sentence and had been on the waiting list to receive that treatment for more than ten years. Father testified that his treatment was in progress, he had met five of the seven required criteria, and he estimated that it would take "anywhere from nine months to indeterminate" to complete the remaining two criteria. Father testified that he believed there was a legal pathway to pursuing contact with the youth but "chose[] to put that on hold" after a conversation with the youth's therapist.

¶ 10    Furthermore, the caseworker provided uncontroverted testimony that the youth was "a little toddler, one, two year[s] old" when he last had contact with father. The youth was thirteen years old at the time of the termination hearing. The caseworker, an expert in child welfare and child protection, opined that building a relationship between father and the youth would require "a lot of" therapeutic work. The caseworker opined "it really would be

starting completely over to try to build that bond" and cautioned that doing so would be more difficult because the youth is "at an age where he can decide if he wants to do that or not."

¶ 11     Father contends that he was in substantial compliance with the treatment plan. The caseworker's uncontested testimony was that father was "active in engaging in what [was] available to him" during his incarceration, including individual therapy, substance dependence treatment, anger management, community college courses, and facility employment. But "even substantial compliance" may not be enough "to render the parent fit." *People In Interest of S.L.*, 2017 COA 160, ¶ 11. Despite father's engagement, the issue that required the court's intervention — father's inability to protect the youth from mother or provide the youth with proper parental care because of the criminal protection order — remained unchanged.

¶ 12     Father also contends that he and the child could "begin contact within a reasonable period of time" because he might be paroled after completing treatment. But father's own testimony was that the soonest he might complete treatment was nine months from the hearing, and that the actual time was "indeterminate."

Thus, because there is record support for the juvenile court's finding that father would not become fit within a reasonable time, we will not disturb it. *See S.Z.S.*, ¶ 27 (finding record support for the court's finding).

### III. Less Drastic Alternative

¶ 13    Next, father claims that the juvenile court erred by finding there was no less drastic alternative to termination. We disagree.

¶ 14    The juvenile court must consider and eliminate less drastic alternatives before it terminates the parent-child legal relationship. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 19; *People in Interest of L.M.*, 2018 COA 57M, ¶ 24. In considering less drastic alternatives, the court bases its decision on the best interest of the child, giving primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3). For example, the court may consider whether an ongoing relationship with the parent would be beneficial or detrimental to the child and the child's need for permanency when determining whether there is a viable alternative to termination. *People in Interest of A.R.*, 2012 COA 195M, ¶¶ 38, 41.

¶ 15   After considering alternatives, the juvenile court determined that there were no less drastic alternatives to termination that would meet the youth's need for permanency.  In doing so, the court noted that the youth wanted to be adopted and needed permanency "as soon as possible."  Thus, there is record support for the court's determination that there was no less drastic alternative to termination and, therefore, we may not disturb that determination.  *See People in Interest of E.W.*, 2022 COA 12, ¶ 34 ("We review a juvenile court's less drastic alternatives findings for clear error.").

¶ 16   Father asserts that the child would have benefited from the opportunity to have a relationship with him, and that there was conflicting evidence about the youth's desire for adoption and the youth's desire for a relationship with father.  We presume that the juvenile court considered all the evidence before it when it made its decision, even if it did not make specific findings as to every issue presented.  *See In re Marriage of Hatton*, 160 P.3d 326, 329-30 (Colo. App. 2007).  Although father testified that he believed the youth wanted a relationship with him, there was also evidence to

the contrary. We reject father's assertion because we cannot reweigh the evidence. *S.Z.S.*, ¶ 29.

¶ 17 Father also asserts that the termination severed the youth's right to one day pursue contact with father. Even if this were true, it is for the youth, not father, to assert this right. "Except in certain limited circumstances, 'a litigant must assert [their] own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *C.W.B., Jr. v. A.S.*, 2018 CO 8, ¶ 18 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)). Father does not assert that any aspect of this case presents such "limited circumstances." Thus, we decline to address this argument.

## IV. Disposition

¶ 18 The judgment terminating father's parent-child legal relationship with the youth is therefore affirmed.

JUDGE WELLING and JUDGE LIPINSKY concur.