1
 2025 CO 34 In Re The People of the State of Colorado, Petitioner: In the Interest of Minor Child: R.M.P., and Concerning R.P., Respondent: No. 25SA78
Supreme Court of Colorado, En Banc
June 2, 2025
 2
 
          
 Original Proceeding Pursuant to C.A.R. 21 Denver District
 Juvenile Court Case No. 24JV30793 Honorable Laurie Clark,
 Judge
 
 
          
 Attorneys for the People of the State of Colorado: Denver
 City Attorney's Office Amy J. Packer, Assistant City
 Attorney Christina R. Kinsella, Assistant City Attorney
 Denver, Colorado
 
 
          
 Attorney for R.M.P.: Josi McCauley, counsel for youth
 Superior, Colorado
 
 3
 
          
 Attorneys for the Denver Juvenile Court: Philip J. Weiser,
 Attorney General Peter G. Baumann, Assistant Solicitor
 General Denver, Colorado
 
 
          
 Attorneys for Respondent: Law Office of Joel M. Pratt Joel M.
 Pratt Colorado Springs, Colorado
 
 
          
 Attorneys for Amicus Curiae Office of the Child's
 Representative: Anna N. Ulrich Sheri Danz Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae Office of Respondent Parents'
 Counsel: Melanie Jordan Zaven Saroyan Denver, Colorado
 
 
           CHIEF
 JUSTICE MARQUEZ delivered the Opinion of the Court, in which
 JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE HART, JUSTICE
 SAMOUR, and JUSTICE BERKENKOTTER joined. JUSTICE GABRIEL
 dissented.
 
 4
 
          ORDER
 MADE ABSOLUTE
 
 
          
 OPINION
 
 
          
 MARQUEZ, CHIEF JUSTICE
 
 
          ¶1
 In McCall v. District Court, 651 P.2d 392, 394
 (Colo. 1982), we held that the State of Colorado
 ("State") is the "exclusive party"
 entitled to bring dependency and neglect proceedings. Four
 years later, a division of the court of appeals carved out a
 narrow exception to that rule, holding that once the State
 has filed a dependency and neglect petition, a child, through
 a guardian ad litem, may pursue a determination of the
 petition's merits-even if the State wishes to dismiss the
 case. People in Int. of R.E., 729 P.2d 1032, 1034
 (Colo.App. 1986).
 
 
          ¶2
 Here, the State moved to dismiss its petition in dependency
 and neglect against R.P. ("father"), but
 father's child, R.M.P., opposed the motion and asked that
 this case proceed to an adjudication of the merits. In
 contrast with the child in R.E., R.M.P. is
 represented by a "counsel for youth," a new form of
 representation under section 19-3-203, C.R.S. (2024), for
 children aged twelve years or older. Unlike a guardian ad
 litem, who represents the child's best interests, a
 counsel for youth represents the child in the same manner as
 an attorney directly representing a client. See
 § 19-3-203(5)-(6).
 
 5
 
          ¶3
 This case presents the issue of whether a child, through
 their counsel for youth, may prosecute[1] a dependency and
 neglect petition against their own parent when the State has
 determined that the petition should be dismissed.
 Underpinning this issue is whether our holding in
 McCall was properly circumscribed by the court of
 appeals' decision in R.E., and whether
 any non-state party may prosecute a dependency and
 neglect petition when the State has determined that doing so
 would not be a valid exercise of its parens patriae
 authority.
 
 
          ¶4
 Consistent with our holding in McCall, we conclude
 that the State, in its role as parens patriae, is
 the sole party that may prosecute dependency and neglect
 proceedings. Nothing in the Children's Code gives a
 guardian ad litem or a counsel for youth authority to
 prosecute a dependency and neglect petition. We therefore
 overrule R.E. to the extent it is inconsistent with
 this opinion.
 
 
          ¶5
 Because only the State has standing to prosecute a dependency
 and neglect petition, R.M.P. may not prosecute the petition
 in dependency and neglect when the State has determined that
 the petition should be dismissed. We therefore make the order
 to show cause absolute.
 
 6
 
          I.
 Facts and Procedural History
 
 
          ¶6
 In September 2024, Denver Human Services (the
 "Department") filed a verified petition in the
 Denver Juvenile Court alleging that thirteen-year-old R.M.P.
 and his nine-year-old sister were dependent or neglected. The
 petition alleged, among other things, that father physically
 assaulted R.M.P., had unsecured firearms and fentanyl pills
 in the house, and locked R.M.P. on a balcony and poured water
 on his head. The juvenile court issued a temporary placement
 order putting the children in foster care and setting a trial
 for adjudication. It also appointed a counsel for youth for
 R.M.P., and a guardian ad litem for his sister.
 
 
          ¶7
 In February 2025, the Department moved to dismiss the
 petition against father.[2] After investigating, the Department had
 determined that R.M.P.'s allegations were false; father
 did not have unsecured firearms or fentanyl pills in the
 house. Further, the allegations of physical abuse stemmed
 from an incident in which father was trying to retrieve
 R.M.P., who was refusing to go with father by holding onto a
 telephone pole. The Department asserted that father's
 actions were "consistent with reasonable parental
 discipline under the circumstances." It further noted
 that father was "trying to bring [R.M.P.] home to a safe
 and loving
 
 7
 
 environment with appropriate measures" to address
 R.M.P.'s supervision and mental health needs.
 
 
          ¶8
 The Department's motion to dismiss also mentioned that
 R.M.P.'s disruptive behavior had escalated while he was
 in foster care. Since the temporary placement order, R.M.P.
 had been moved between three different foster homes due to
 behavioral issues. He was refusing to attend school; causing
 problems with other foster children; using a THC pen and
 smoking; masturbating in common areas of the foster homes;
 and running away from foster placements, including one night
 when he slept in a tent with an adult, unhoused man. He had
 also been arrested for making violent threats at school,
 leading to pending charges in a separate juvenile delinquency
 action, 25JD124, in Adams County ("Adams County
 case"). The Department concluded that "it is clear
 that the Court and Department['s] involvement is
 detrimental to [R.M.P.] and his relationship to his
 father."
 
 
          ¶9
 The Department therefore requested that the matter be
 dismissed and R.M.P. be returned to father's custody
 because it had no ongoing safety concerns and father had
 provided a "real plan" to manage R.M.P.'s
 behaviors. It reasoned that there was insufficient evidence
 to adjudicate R.M.P. as dependent or neglected; rather,
 "the evidence largely shows a father trying to manage
 his son's [behavior] reasonably well given the
 circumstances."
 
 8
 
          ¶10
 R.M.P., through his counsel for youth, objected to the
 dismissal. He asserted that he was dependent or neglected in
 father's care and would run away if he was returned to
 father's custody. Instead of dismissing the petition,
 R.M.P. asked the juvenile court to either (1) grant summary
 judgment in his favor, declaring him to be dependent or
 neglected; (2) proceed to a jury trial adjudicating the
 merits; or (3) hold a hearing to prove that the petition was
 supported by credible evidence.
 
 
          ¶11
 The juvenile court chose the third option. Relying on
 R.E., the court held a hearing to determine whether
 the petition should move forward despite the Department's
 motion to dismiss. Noting that R.E. gave no guidance
 on how such a hearing should be conducted, the court
 analogized the case to a criminal preliminary hearing to
 determine probable cause and heard offers of proof from the
 counsel for youth and father as to the allegations in the
 petition to determine "whether there [was] credible
 evidence to move forward." The court did not take
 testimony or allow cross-examination and did not allow the
 Department to present any offer of proof. At the conclusion
 of the hearing, the juvenile court found that there was
 sufficient evidence supporting the petition to move forward
 to trial on the adjudication of R.M.P. as dependent or
 neglected.
 
 
          ¶12
 Father, supported by the Department, sought relief from this
 court under C.A.R. 21, asserting that R.M.P., through his
 counsel for youth, cannot prosecute
 
 9
 
 the petition in dependency and neglect over the State's
 motion to dismiss. We issued an order to show cause.
 
 
          II.
 Original Jurisdiction
 
 
          ¶13
 The decision to exercise our original jurisdiction pursuant
 to C.A.R. 21 is within our sole discretion. C.A.R. 21(a)(2).
 Relief under this rule "is extraordinary in nature"
 and "will be granted only when no other adequate remedy
 is available, including relief available by appeal."
 Id.
 
 
          ¶14
 As father and the Department point out, R.M.P.'s
 situation is time-sensitive, and the longer he remains out of
 father's custody, the more likely his behavioral issues
 will continue to escalate. This concern is compounded by the
 fact that R.M.P. is currently in juvenile custody in the
 Adams County case. According to a recent motion filed by
 R.M.P. below, R.M.P. seeks to be placed temporarily with his
 psychological grandfather, Pop Pop, whose primary residence
 is in Virginia.[3]Father has "vehement objections"
 to this proposed placement and questions whether the Denver
 Juvenile Court has authority to make placement decisions for
 
 10
 
 R.M.P., given the pendency of the Adams County case. In any
 event, because this case concerns whether R.M.P. should be
 adjudicated dependent or neglected as to father, and because
 over twenty-five foster placements have declined to take
 R.M.P., he remains in custody without any immediate placement
 options. We therefore share father's concern that
 resolution of the legal issue before us is both urgent and
 consequential. Given the length of time it may take the
 juvenile court to conduct a trial and for father to appeal,
 the ordinary appellate process does not provide an adequate
 remedy under the circumstances here.
 
 
          ¶15
 Moreover, because the counsel for youth position is a new
 form of representation with little guiding precedent in
 Colorado, whether a child, through their counsel for youth,
 may prosecute a dependency and neglect petition against their
 own parent when the State has determined that the petition
 should be dismissed is "an issue of first impression
 that is of significant public importance." People v.
 Subjack, 2021 CO 10, ¶ 13, 480 P.3d 114, 117. And,
 because this issue has arisen in the past, albeit in the
 guardian ad litem context, we conclude it is "likely to
 recur." People v. Tafoya, 2019 CO 13, ¶
 15, 434 P.3d 1193, 1195.
 
 
          ¶16
 We therefore exercise our jurisdiction under C.A.R. 21.
 
 
          III.
 Preservation and Standard of Review
 
 
          ¶17
 R.M.P. and the juvenile court assert that neither father nor
 the Department preserved the issue of whether a non-state
 party may prosecute a dependency and
 
 11
 
 neglect petition over the State's objection, and thus the
 issue is waived. Father agrees that the issue is unpreserved,
 but he asks us to review the issue to avoid a miscarriage of
 justice. See People in Int. of M.B., 2020 COA 13,
 ¶ 20, 459 P.3d 766, 770.
 
 
          ¶18
 We conclude that whether a non-state party can prosecute a
 dependency and neglect petition ultimately presents an issue
 of standing, which implicates the juvenile court's
 jurisdiction to proceed and thus may be raised at any time.
 See C.W.B., Jr. v. A.S., 2018 CO 8, ¶ 16, 410
 P.3d 438, 442 ("Standing is a jurisdictional
 prerequisite that may be raised at any stage of the
 proceeding."). We therefore review this issue de novo.
 Id.
 
 
          IV.
 Only the State May Prosecute Dependency and Neglect
 Proceedings
 
 
          ¶19
 For over forty years, this court has consistently held that
 "[t]he State is the exclusive party entitled to bring an
 action in dependency and neglect." Id. at
 ¶ 22, 410 P.3d at 444 (citing McCall, 651 P.2d
 at 394); see also L.G. v. People, 890 P.2d 647, 654
 (Colo. 1995) (same); A.M. v. A.C., 2013 CO 16,
 ¶ 12, 296 P.3d 1026, 1030 (same); People in Int. of
 L.M., 2018 CO 34, ¶ 21, 416 P.3d 875, 880
 ("Notably, only the State may file . . . a [dependency
 and neglect] petition."). This is because "[t]he
 [S]tate's interest in juvenile proceedings stems from its
 role as parens patriae." McCall, 651
 P.2d at 394.
 
 12
 
          ¶20
 "Parens patriae means literally 'parent of
 the country.'" Alfred L. Snapp & Son, Inc.
 v. Puerto Rico ex rel. Barez, 458 U.S. 592, 600 (1982).
 It has been defined as the "doctrine by which a
 government has standing to prosecute a lawsuit on behalf of a
 citizen, [especially] on behalf of someone who is under a
 legal disability to prosecute the suit." Parens
 Patriae, Black's Law Dictionary (12th ed. 2024).
 Under this longstanding doctrine, it is the State's
 "unquestioned right and imperative duty . . . to protect
 and provide for the comfort and well-being of such of its
 citizens [who], by reason of infancy . . . are unable to take
 care of themselves." In re House, 46 P. 117,
 118 (Colo. 1896) (quoting McLean Cnty. v. Humphreys,
 104 Ill. 378, 383 (1882)). Accordingly, "[t]he
 provisions of [a]rticle 3 of the Children's Code are
 structured to allow the State, under its parens
 patriae authority, to intervene into the familial
 relationship where necessary to protect the welfare of
 children." C.W.B., Jr., ¶ 22, 410 P.3d at
 443; see also L.G., 890 P.2d at 654 ("Under the
 Children's Code, the State of Colorado acts as parens
 patriae-sovereign guardian-to safeguard the interests of
 vulnerable children within the state.").
 
 
          ¶21
 The Children's Code establishes the procedures for
 dependency and neglect proceedings. If a child is reported as
 abused or neglected to a county department of human services
 or local law enforcement agency, that body must notify the
 juvenile court of the report. C.W.B., Jr., ¶
 22, 410 P.3d at 444; § 19-3-312(1), C.R.S. (2024). The
 juvenile court may then, after investigation, authorize the
 filing of a
 
 13
 
 dependency and neglect petition. C.W.B., Jr., ¶
 22, 410 P.3d at 444; § 19-3-312(1). "[T]he People
 of the State of Colorado, through the relevant county
 department of human services, may file a petition in
 dependency and neglect" under section 19-3-502, C.R.S.
 (2024). C.W.B., Jr., ¶ 22, 410 P.3d at 444. At
 an adjudicatory hearing, "the State must prove the
 allegations in the petition by a preponderance of the
 evidence, and if the State has done so, the court will
 sustain the petition and adjudicate the children as dependent
 or neglected." Id.; see also §
 19-3-505(7), C.R.S. (2024).
 
 
          ¶22
 The Children's Code does not authorize non-state parties
 to file dependency and neglect petitions. C.W.B.,
 Jr., ¶ 22, 410 P.3d at 444 (citing McCall,
 651 P.2d at 394). Nothing in the Children's Code confers
 on a child, either through a guardian ad litem or a counsel
 for youth, a right to initiate or prosecute a dependency and
 neglect petition against the child's parents.
 See §§ 19-3-203, -312(1), -501, -502,
 -505.
 
 
          ¶23
 Although dependency and neglect proceedings are initiated
 with the child's best interest in mind, it is the State,
 as parens patriae, that has the legal interest in
 determining whether a child should be adjudicated dependent
 or neglected. See C.W.B., Jr., ¶ 22, 410 P.3d
 at 444 (citing McCall, 651 P.2d at 394). Ordinarily,
 the State has no basis to intervene in the parent-child
 relationship:
 
 
 So long as a parent adequately cares for his or her children,
 (i.e., is fit), there will normally be no reason for the
 State to inject itself into the private realm of the family
 to further question the ability of that
 
 14
 
 parent to make the best decisions concerning the rearing of
 that parent's children.
 
 
 Troxel v. Granville, 530 U.S. 57, 68-69
 (2000). However, where a parent is unwilling or unable to
 adequately care for a child, the government has the power to
 intrude on the family relationship, including the
 parents' constitutionally grounded right to raise their
 children as they deem appropriate. Ultimately, dependency and
 neglect proceedings ask whether the State should exercise its
 authority to intervene in that relationship and take custody
 of a child:
 
 
 [I]n a dependency proceeding . . . the question to be
 resolved is . . . whether or not the existing custody and
 surroundings of the child are such that it is the duty of the
 state, as parens patriae, to take over [the
 child's] custody and make [the child] a ward of the
 state.
 
 
 Everett v. Barry, 252 P.2d 826, 829 (Colo. 1953).
 
 
          ¶24
 In sum, the Children's Code and the parens
 patriae doctrine make clear that the State is the
 exclusive party to prosecute dependency and neglect
 proceedings. While C.R.C.P. 17(a) allows for an action to
 "be brought in the name of the [P]eople of the [S]tate
 of Colorado" by a non-state party, this is only
 "when a statute so provides." But nothing in the
 Children's Code allows a child to prosecute a dependency
 and neglect petition in the name of the People. Nor does
 anything in the Colorado Rules of Juvenile Procedure allow a
 non-state party to prosecute or substitute for the State in a
 dependency and neglect action. See C.R.J.P. 1
 (specifying that the Colorado Rules of Civil Procedure apply
 when the rules of
 
 15
 
 juvenile procedure do not govern). Indeed, to allow a child
 (or another non-state party, such as a family member or
 foster parent) to prosecute dependency and neglect actions
 risks transforming the government's parens
 patriae authority to protect children into a weaponized
 family court system.
 
 
          ¶25
 Here, the juvenile court, by allowing R.M.P. to prosecute the
 dependency and neglect petition when the Department had
 determined that doing so would not be a valid exercise of its
 parens patriae authority, ran afoul of this
 court's longstanding case law. See McCall, 651
 P.2d at 394; L.G., 890 P.2d at 654; A.M.,
 ¶ 12, 296 P.3d at 1030; L.M., ¶ 21, 416
 P.3d at 880.
 
 
          ¶26
 To be fair, the juvenile court relied on the court of
 appeals' 1986 decision in R.E., which allowed a
 guardian ad litem to prosecute a dependency and neglect
 petition dismissed by the State. However, this court is not
 bound by R.E., and we are unpersuaded by its
 reasoning.
 
 
          ¶27
 In R.E., the mother of a minor child filed a
 dissolution of marriage petition in district court. 729 P.2d
 at 1033. The county attorney then filed a dependency and
 neglect petition concerning the child, and the case went to a
 juvenile commissioner. Id. Ultimately, the county
 attorney moved to dismiss the petition in dependency and
 neglect because "all matters concerning the child could
 be handled in the pending dissolution action."
 Id. The guardian ad litem objected and argued that
 she could assume the role of the county attorney and
 prosecute
 
 16
 
 the dependency and neglect petition. Id. The
 juvenile commission disagreed and dismissed the case.
 Id. On appeal, a division of the court of appeals
 reversed. Id.
 
 
          ¶28
 The division acknowledged that, under McCall, the
 State is the exclusive party that may file a dependency and
 neglect petition. Id. at 1033-34. It nevertheless
 concluded-without citation to authority-that "[b]ecause
 the [S]tate has made such allegations about the child's
 status, the child, through the guardian ad litem, is entitled
 to a determination of the merits, and the petition may not be
 dismissed over the objection of the guardian ad
 litem."[4] Id. at 1034.
 
 
          ¶29
 We disagree with this reasoning. Although the State must
 generally allege credible evidence to file a dependency and
 neglect petition, see C.W.B., Jr., ¶ 22, 410
 P.3d at 444 (citing §§ 19-3-312(1), -501, -502),
 the State's decision to initiate a petition does not
 confer standing on non-state parties, see id. at
 ¶ 18, 410 P.3d at 443. The parens patriae
 doctrine that underlies the State's limited authority to
 
 17
 
 intervene in familial relationships only when necessary to
 protect the welfare of children means that the State alone
 has authority to prosecute a dependency and neglect petition.
 We therefore conclude that the exception carved out by the
 court of appeals in R.E. is inconsistent with the
 reasoning in McCall and its progeny. Accordingly, we
 overrule R.E. to the extent it is inconsistent with
 this opinion.
 
 
          ¶30
 We also reject R.M.P.'s argument that a child, through
 his counsel for youth or guardian ad litem, is "best
 postured to proceed with [the] prosecution of the
 petition" when the State has moved to dismiss the
 petition. Allowing a child (or any non-state party) to
 override the State's determination that a petition should
 be dismissed would be analogous to allowing the victim of a
 crime to prevent the district attorney from dismissing a
 criminal case. Colorado law does not confer such a right.
 See § 24-4.1-302.5(1), C.R.S. (2024).
 
 
          ¶31
 Indeed, this case presents an issue analogous to one that has
 arisen in the criminal context; namely, whether a trial court
 errs by refusing to grant the State's motion to dismiss
 charges against a defendant. See, e.g., People
 v. Storlie, 2014 CO 47, ¶ 1, 327 P.3d 243, 244.
 This court has noted that "[a]t common law, prosecutors
 had the unilateral authority to dismiss criminal
 charges." Id. at ¶ 9, 327 P.3d at 246.
 Although "[t]his unrestricted authority was limited by
 the enactment of Crim. P. 48, which requires prosecutors to
 obtain 'the court's consent and approval' prior
 to dismissal of the charges," we have "narrowly
 defined the
 
 18
 
 circumstances under which the trial court's discretion to
 deny a dismissal motion may be exercised." Id.
 at ¶¶ 9-10, 327 P.3d at 246; see also
 § 16-5-209, C.R.S. (2024) (granting the court the
 authority to compel prosecution if the dismissal of charges
 was "arbitrary or capricious and without reasonable
 excuse").
 
 
          ¶32
 No provisions analogous to Crim. P. 48 or section 16-5-209
 exist in the dependency and neglect context. Even if there
 were such provisions, the Department's motion to dismiss
 here could not be construed as arbitrary or capricious and
 without reasonable excuse. Cf. § 16-5-209. The
 Department's motion asserted that (1) the petition was
 founded, in part, on false statements from R.M.P.; (2) the
 Department had no ongoing safety concerns; (3) father had
 been working with the Department to develop plans to address
 R.M.P.'s behavior, which had escalated dramatically while
 he was in foster care; and (4) R.M.P.'s sister, who was
 represented by a guardian ad litem, had been successfully
 reunited with father. We therefore conclude that the juvenile
 court should have granted the Department's motion to
 dismiss the petition in dependency and neglect.
 
 
          V.
 Conclusion
 
 
          ¶33
 We reiterate today that "[t]he State is the exclusive
 party entitled to bring an action in dependency and
 neglect." C.W.B., Jr., ¶ 22, 410 P.3d at
 444 (citing McCall, 651 P.2d at 394). Under the
 parens patriae doctrine and the Children's Code,
 the State is the sole party with standing to prosecute
 dependency and neglect
 
 19
 
 proceedings. Accordingly, R.M.P. may not prosecute the
 dependency and neglect petition over the State's motion
 to dismiss.
 
 
          ¶34
 We therefore make the order to show cause absolute and remand
 the case to the juvenile court with instructions to dismiss
 the petition.
 
 
          
 JUSTICE GABRIEL dissented.
 
 20
 
          
 JUSTICE GABRIEL, dissenting.
 
 
          ¶35
 The majority perceives the issue presented in this case to be
 whether a counsel for youth ("CFY") may
 "prosecute" a dependency and neglect petition over
 the State's objection. Maj. op. ¶ 3. With respect, I
 see the issue completely differently. This case arose because
 the juvenile court declined to grant the Department of Human
 Services's motion to dismiss its dependency and neglect
 petition and ordered, instead, that the matter proceed to a
 full adjudicatory hearing. Accordingly, in my view, the
 question presented is whether the Department may unilaterally
 dismiss a dependency and neglect petition for any or no
 reason and without any oversight by the juvenile court or
 anyone else.
 
 
          ¶36
 In ruling as it does today, the majority effectively
 concludes that when the Department wishes to dismiss a
 dependency and neglect petition that it filed, the juvenile
 court has no discretion to reject the Department's motion
 to dismiss, and the Department's unilateral determination
 as to the merits of its petition is final and unassailable by
 the court or any other party. This is because, in the
 majority's view, if the Department decides that its
 evidence is insufficient, then the Department may choose to
 dismiss the petition; no other party is entitled to introduce
 contrary evidence because that would be
 "prosecuting" that petition; and the juvenile court
 has no authority to conclude, contrary to the
 Department's position, that sufficient evidence, in fact,
 exists. The majority reaches this
 
 21
 
 conclusion by relying predominantly on McCall v. District
 Court, 651 P.2d 392, 394 (Colo. 1982), in which we
 observed that the State is the exclusive party to file a
 dependency and neglect proceeding, and by overruling the
 division's opinion in People in Interest of
 R.E., 729 P.2d 1032 (Colo.App. 1986), which has been on
 the books and has operated effectively to protect the rights
 of children for almost four decades, Maj. op. ¶¶ 1,
 4, 19-29.
 
 
          ¶37
 Because I believe that (1) the majority's conclusion is
 inconsistent with the text and purposes of the Colorado
 Children's Code and is contrary to the legislature's
 intent in establishing the CFY role; (2) the majority
 overrules without legitimate reason longstanding precedent
 that has well served the interests of children in this state
 for almost four decades; and (3) the procedure employed by
 the juvenile court here was consistent with the text and
 purposes of the Code, I would discharge our order to show
 cause. Accordingly, I respectfully dissent.
 
 
          I.
 Facts and Procedural History
 
 
          ¶38
 The facts that are relevant to my analysis are undisputed.
 
 
          ¶39
 Respondent father R.P. ("Father") has two children,
 R.M.P. and C.P., who were thirteen and nine years old,
 respectively, at the time the present C.A.R. 21 petition was
 filed (C.P. is no longer involved in this case). The
 Department removed the children from Father based on concerns
 regarding alleged physical abuse, lack of supervision, and an
 injurious environment. Additionally, there
 
 22
 
 were allegations of weapons and substance use in the home, as
 well as fears of retaliation by Father against R.M.P. And it
 had been reported that Father had poured water on R.M.P. and
 forced him to stay on the porch of the family home for a
 period of time.
 
 
          ¶40
 Based on these allegations, the Department filed a dependency
 and neglect petition, and the juvenile court placed the
 children in foster care and appointed a CFY for R.M.P.
 Thereafter, R.M.P.'s behavior appears to have
 deteriorated dramatically, and the evidence reveals concerns
 that R.M.P. is at risk of human trafficking, gang
 affiliation, and drug distribution.
 
 
          ¶41
 One business day before the adjudicatory hearing was to take
 place, the Department moved to dismiss the petition,
 contending that there was insufficient evidence to support an
 adjudication. R.M.P. objected to the dismissal, citing fear
 of Father, concerns of retaliation, an intent to run away,
 and a desire to be placed with a different family member.
 
 
          ¶42
 In accordance with R.E., 729 P.2d at 1034, the
 juvenile court convened a hearing on the Department's
 motion. Notably, at the outset of this hearing, the
 Department agreed that R.M.P. was entitled to a hearing on
 the sufficiency of the evidence, separate from the
 adjudicatory hearing, and it conceded that R.M.P. could
 prosecute the petition in the event sufficient evidence
 existed, although in its briefing before us, it has now taken
 the opposite positions. Father joined the
 
 23
 
 Department's motion to dismiss but indicated that he was
 prepared to continue to a jury trial or hearing under
 R.E. if necessary. Father did not take a position on
 whether R.M.P. could prosecute the petition if the Department
 chose not to do so.
 
 
          ¶43
 The court then heard offers of proof from the CFY and from
 Father regarding the petition's allegations. The purpose
 of this procedure was to determine whether, notwithstanding
 the Department's position, sufficient evidence existed to
 support the petition and, therefore, to move to a full
 adjudicatory hearing.
 
 
          ¶44
 The court ultimately ruled that several allegations of the
 petition supported a possible adjudication, and the court
 thus reset the adjudicatory hearing.
 
 
          ¶45
 Father then filed a C.A.R. 21 petition asking us to enter an
 order to show cause, and we did so.
 
 
          II.
 Analysis
 
 
          ¶46
 I begin by addressing the pertinent provisions of the
 Children's Code, noting the significant role that the
 legislature has reserved to the courts in overseeing
 dependency and neglect proceedings and explaining why I
 believe the majority's opinion erroneously undermines the
 juvenile court's authority in such matters. Next, I
 discuss why I believe the majority erred in overruling
 R.E. Lastly, I explain why the majority's
 opinion is contrary to the legislature's intent in
 establishing the CFY position.
 
 24
 
          A.
 The Children's Code
 
 
          ¶47
 The purposes of the Children's Code include, among other
 things, (1) securing for every child subject to the Code
 "such care and guidance, preferably in his own home, as
 will best serve his welfare and the interests of
 society"; and (2) removing a child from the custody of
 the child's parents "only when his welfare and
 safety or the protection of the public would otherwise be
 endangered and, in either instance, for the courts to proceed
 with all possible speed to a legal determination that will
 serve the best interests of the child." §
 19-1-102(1)(a), (c), C.R.S. (2024).
 
 
          ¶48
 To these ends, the Code mandates substantial judicial
 oversight in dependency and neglect matters.
 
 
          ¶49
 For example, when a law enforcement officer or another person
 believes that a child is within the court's jurisdiction,
 the officer or other person may refer the matter to the
 court, and the court, through the probation
 department, county department of human or social services, or
 any other agency designated by the court, must make a
 preliminary investigation to determine whether the
 child's or the community's interests require that
 further action be taken. § 19-3-501(1), C.R.S. (2024).
 Based on this investigation, the court may decide
 that no further action is required, or it may authorize a
 petition to be filed. § 19-3-501(1)(a)-(b).
 
 25
 
          ¶50
 Similarly, upon receipt of a report from a law enforcement
 agency or a person with statutory obligations to make such
 reports indicating that a child has suffered abuse and that
 the child's best interests require that the child be
 protected from the risk of further abuse, the court
 may order the filing of a petition. § 19-3-501(2)(a).
 And upon receipt of such a report from any other person,
 the court, after conducting a reasonable
 investigation, may order the filing of a petition. §
 19-3-501(2)(b).
 
 
          ¶51
 These provisions make clear that the court has substantial
 oversight regarding the filing of a dependency and neglect
 petition.
 
 
          ¶52
 But the court's authority does not end there. Section
 19-3-505, C.R.S. (2024), of the Code provides for substantial
 judicial oversight in the context of the adjudicatory hearing
 itself. Thus, at that hearing, the court must consider
 whether the petition's allegations are supported by a
 preponderance of the evidence. § 19-3-505(1). In
 addition, the court is statutorily required to hold the
 adjudicatory hearing "at the earliest possible
 time," with relatively limited grounds to delay the
 hearing. § 19-3-505(3). And the court is statutorily
 authorized to order that a petition be amended to conform to
 the evidence if the evidence presented at the hearing
 discloses facts not alleged in the petition. §
 19-3-505(4)(a)-(b).
 
 
          ¶53
 In short, the Children's Code vests the juvenile court
 with substantial discretion to direct dependency and neglect
 proceedings before it, People in Int. of G.S., 820
 P.2d 1178, 1181 (Colo.App. 1991),
 
 26
 
 and I perceive nothing in the Code, and the majority cites
 nothing, that authorizes the Department to exercise
 unilateral control over a dependency and neglect petition
 once that petition is filed (or to preclude a court from
 disagreeing with the Department's determination as to
 whether sufficient evidence exists to support an
 adjudication).
 
 
          ¶54
 To the contrary, allowing the Department to exercise such
 unfettered control undermines the authority that the Code
 gives the juvenile court to direct the filing of dependency
 and neglect petitions and to control such proceedings. By way
 of example, although subsections 19-3-501(1)(b) and (2)
 authorize the court to order the filing of a petition, under
 the majority's view, the Department can render the
 court's authority toothless because the Department can
 simply dismiss a petition after complying with the
 court's order to file it.
 
 
          ¶55
 The majority's view is also contrary to section
 19-3-502(4.5), C.R.S. (2024), which provides, "A child
 named in the petition shall be a party to the proceedings and
 have the right to attend and fully participate in all
 hearings related to the child's case." As parties to
 the proceedings, a child and a youth (i.e., a child over the
 age of twelve) have the right to be heard. The majority
 today, however, substantially undermines children's and
 youth's voices by giving unfettered authority to the
 Department to dismiss a case, over the child's or
 youth's objection,
 
 27
 
 for any or no reason. Again, I perceive such a ruling to be
 directly contrary to the terms and purposes of the
 Children's Code.
 
 
          ¶56
 In light of the foregoing, unlike the majority, I believe
 that the juvenile court in this case addressed the
 Department's motion to dismiss in a manner fully
 consistent with the Code. The court properly did not allow
 the Department to dismiss the case unilaterally. Rather, the
 court recognized its substantial obligation to provide
 oversight and convened a hearing to determine whether
 dismissal was appropriate, allowing R.M.P., as a party to
 this case, to be fully heard. Then, after determining that
 the evidence, in fact, supported a potential adjudication,
 the court reset the matter for a full hearing. In my view,
 this procedure was true to the text and purposes of the Code,
 and although we have not yet opined on this issue, other
 jurisdictions that have done so have agreed with my analysis.
 See, e.g., In re J.J.Z., 630 A.2d 186, 196
 (D.C. 1993) (concluding that, when the State moves to dismiss
 a child neglect proceeding, the court must conduct a
 sufficient inquiry to determine whether dismissal is in the
 child's best interests, and noting that the court is not
 precluded from hearing evidence on this issue to allow the
 court to discharge its responsibility); In re J.J.,
 566 N.E.2d 1345, 1349-50 (Ill. 1991) (holding that when the
 State moves to dismiss a petition alleging abuse of a minor,
 the court must consider the merits of the motion and
 determine, on the record, whether dismissal is in the best
 interests of the minor, the minor's
 
 28
 
 family, and the community, rejecting the State's argument
 that it had an absolute right to a voluntary dismissal);
 In re Ro.B, No. 23A-JC-2149, 2024 WL 358228, at
 *3-*4 (Ind.Ct.App. Jan. 31, 2024) (unpublished table
 decision) (rejecting the State's contention that the
 trial court had no discretion to deny the State's motion
 to dismiss a children-in-need-of-services case, and
 concluding that the court has discretion to deny such a
 motion if dismissal is not in the child's best
 interests); In re Najasha B., 972 A.2d 845, 856 (Md.
 2009) (concluding that the department of social services does
 not have the unilateral right to withdraw a
 child-in-need-of-assistance petition when the child objects
 and that, in such circumstances, the child is entitled to an
 adjudication to ensure that the child is receiving proper
 care and attention).
 
 
          ¶57
 In reaching this conclusion, I disagree with the
 majority's assertion that allowing a child, youth, or
 other non-state party to object to the Department's
 unilateral decision to dismiss a dependency and neglect
 petition would be analogous to allowing a crime victim to
 prevent a prosecutor from dismissing a criminal case. Maj.
 op. ¶¶ 30-31. Notwithstanding the majority's
 assumption to the contrary, the Department in a dependency
 and neglect case is not like a prosecutor in a criminal case.
 It is well settled that under our constitution's
 separation of powers principle, prosecutors have substantial
 discretion over the cases that they prosecute and the charges
 that they file. See People v. Stewart, 55 P.3d 107,
 118 (Colo. 2002);
 
 29
 
 People v. Dist. Ct., 632 P.2d 1022, 1024 (Colo.
 1981); People v. Valles, 2013 COA 84, ¶ 14, 412
 P.3d 537, 543. Accordingly, as the majority points out,
 courts have limited authority to interfere with a
 prosecutor's decision to dismiss a case. Maj. op. ¶
 31. The same cannot be said of the Department. Indeed, as
 noted above, and in contrast to a criminal prosecutor's
 substantial discretion, the court controls when the
 Department can file a dependency and neglect petition. Yet,
 ironically, the majority gives the Department more
 authority than is afforded prosecutors because, although a
 prosecutor's decision to dismiss a case is subject to at
 least some judicial oversight, see id., under the
 majority's view, the Department's decision is subject
 to no oversight at all.
 
 
          ¶58
 Nor is the majority's comparison of R.M.P. to a crime
 victim apt. Crime victims are not parties in a criminal case.
 As noted above, however, by law, children and youths like
 R.M.P. are parties in dependency and neglect
 proceedings. This is a distinction with a material
 difference, and in not recognizing that distinction, the
 majority eliminates substantial rights of these parties.
 
 
          ¶59
 For these reasons, I would affirm the manner in which the
 juvenile court proceeded in this case and discharge our order
 to show cause.
 
 30
 
          B.
 R.E.
 
 
          ¶60
 The majority compounds its erroneous view of what the
 Children's Code demands by misreading and then overruling
 the division's opinion in R.E., which has
 operated well to protect the rights of children for almost
 four decades and which, I believe, is faithful to the
 above-described requirements of the Code.
 
 
          ¶61
 In R.E., 729 P.2d at 1033, the county attorney filed
 a dependency and neglect petition but subsequently moved to
 dismiss that petition on the ground that matters concerning
 the child could be addressed in a then-pending dissolution
 action. After the matter was dismissed, the child's
 guardian ad litem ("GAL") appealed, contending that
 when the State refuses to proceed with the case, the GAL, as
 a party to the proceeding, could assume the role of
 petitioner and continue the litigation. Id. The
 division did not adopt the GAL's position but rather
 concluded that although the State was the exclusive party to
 file a dependency and neglect petition, the district court
 was not required to dismiss the petition merely because the
 State later chose not to pursue it. Id. at 1033-34.
 The division observed that when the State files a dependency
 and neglect petition, it must set forth "credible facts
 supporting its belief that the child is dependent and
 neglected and that, for the child's own protection and
 well-being, he or she should be taken from existing custody
 and become a ward of the state." Id. at 1034.
 The division opined that once the State has made such
 allegations, the child at issue is entitled to a
 
 31
 
 determination on the merits, and the petition may not be
 dismissed over the GAL's objection. Id. Rather,
 if such an objection is made, then the district court is
 required to conduct a hearing to determine whether the
 petition was supported by competent evidence and whether the
 child was, in fact, dependent and neglected. Id.
 
 
          ¶62
 In my view, the conclusion reached by the R.E.
 division is fully consistent with the Children's
 Code's recognition that the juvenile court, not the
 Department, oversees dependency and neglect proceedings. The
 R.E. division's opinion is also consistent with
 the Code's recognition that the child is to have a voice
 in dependency and neglect proceedings. Accordingly, when the
 Department seeks to dismiss a dependency and neglect petition
 over the objection of a GAL or a CFY, then the proper
 procedure is, as occurred below, for the juvenile court to
 conduct a hearing to determine whether the evidence supports
 an adjudication. Indeed, here, the juvenile court afforded
 the Department additional process: it held an
 initial hearing in which R.M.P., who, through his CFY,
 objected to the dismissal, was required to establish
 sufficient grounds to proceed to a full adjudicatory hearing.
 I believe that this procedure was an appropriate and
 efficient way to proceed in this case, and I would not
 second-guess the court's case management.
 
 
          ¶63
 In reaching this conclusion, I am not persuaded by the
 majority's expansive reading of McCall, 651 P.2d
 at 394, and the cases that have cited it. To be sure, in
 
 32
 
 McCall, we observed that the State is the exclusive
 party to "bring" (i.e., file) a dependency and
 neglect proceeding. Id. We did not, however, alter
 the statutory framework providing that when the State files
 such a petition, it does so at the court's behest. Nor
 did we, in any way, grant the Department the authority to
 dismiss a petition that it has brought whenever it wishes to
 do so, without the court's approval, and contrary to the
 court's determination that sufficient evidence exists to
 support an adjudication. And we in no way discussed who is
 entitled to "prosecute" a dependency and neglect
 proceeding after it is filed. The majority simply assumes
 that case law determining who can initiate a
 dependency and neglect proceeding governs how a case proceeds
 thereafter. In my view, the law does not support that logical
 leap.
 
 
          ¶64
 For these reasons, unlike the majority, see Maj. op.
 ¶ 29, I perceive nothing in R.E. that is
 inconsistent with our ruling in McCall. As noted
 above, the R.E. division acknowledged that the State
 is the exclusive party to file a dependency and neglect
 petition. R.E., 729 P.2d at 1033-34. The
 R.E. division did not confer standing on the GAL to
 file a dependency and neglect petition, as the majority
 asserts. Maj. op. ¶ 29. Nor did the division say
 anything about who "prosecutes" the matter after it
 is filed. It merely concluded that once the petition is
 filed, the State may not unilaterally dismiss it over the
 GAL's (i.e., another party's) objection, and the
 juvenile court must decide the petition on its merits.
 R.E., 729 P.2d at 1034.
 
 33
 
 As noted above, I believe that this ruling is fully
 consistent with the text and purposes of the Children's
 Code.
 
 
          ¶65
 I likewise am unpersuaded that a CFY should be treated
 differently from a GAL in circumstances like those present
 here. The division's opinion in R.E. did not
 turn on the fact that a GAL is required to act in a
 child's best interest (in contrast to a CFY, who has a
 more traditional client-directed role). The R.E.
 division did not even mention the unique role of a GAL.
 Instead, as noted above, it relied on the fact that once the
 Department chooses to inject itself into a family's life,
 then it may not unilaterally dismiss its petition over a
 child's objection. Id.
 
 
          ¶66
 For these reasons, I perceive no basis for overturning a
 precedent that has been on the books for almost four decades
 and that has served children well and without controversy
 throughout that lengthy period. Moreover, I see no reason to
 decline to extend R.E.'s reasoning to allow a
 CFY (also a party to the proceeding) to object to the
 Department's motion to dismiss a dependency and neglect
 petition, just as a GAL may do, and to require the court then
 to determine whether sufficient evidence exists to proceed to
 an adjudication. For the reasons discussed above, such a
 result is fully consistent with the terms and purposes of the
 Children's Code.
 
 34
 
          C.
 The CFY's Role
 
 
          ¶67
 Finally, I am unpersuaded by the concerns expressed by Father
 and the Department, which the majority adopts, see
 Maj. op. ¶ 24, that if a CFY can object to the
 Department's dismissal of a dependency and neglect
 petition, then this would result in the absurd scenario in
 which twelve-year-old children can effectively
 "divorce" their own parents (or, as the majority
 puts it, create a "weaponized family court
 system"). Such a view finds no support in the text and
 legislative purposes of the Children's Code, it is
 inconsistent with the reasons underlying the advent of the
 position of a CFY, and it is unfounded in fact.
 
 
          ¶68
 As noted above, the Code makes clear that the child is a
 party to a dependency and neglect proceeding and, thus, has
 the right to participate fully in that proceeding. §
 19-3-502(4.5). The position taken by Father and the
 Department and the majority's ruling in this case
 eliminate this right in circumstances in which the Department
 unilaterally moves to dismiss a petition that it filed.
 
 
          ¶69
 Moreover, the concept of a CFY was added to the Code in 2022,
 and in doing so, the legislature found and declared:
 
 
 (a) Every child or youth has a liberty interest in the
 child's or youth's own health, safety, well-being,
 and family relationships, which may be directly impacted by
 dependency and neglect proceedings;
 
 
 (b) A child or youth deserves to have a voice when important
 and life-altering decisions are made about the child's or
 youth's life;
 
 35
 
 (c) A child or youth has the right to high-quality legal
 representation, to attend court proceedings, and to
 participate in dependency and neglect proceedings;
 
 
 (d) Every child or youth deserves an attorney throughout the
 pendency of the court proceedings. Every child or youth
 twelve years of age or older deserves an attorney who will
 consider the child's or youth's position and reasons
 for the position, provide independent counsel and independent
 investigation to inform those positions, and represent the
 child's or youth's position diligently both inside
 and outside of court; and
 
 
 (e) When a child or youth believes the child's or
 youth's position has been effectively advocated,
 procedural fairness and justice enhance the child's or
 youth's acceptance of the proceedings and the decisions
 made.
 
 
 Ch. 92, sec. 1(1), 2022 Colo. Sess. Laws 430, 430-31.
 
 
          ¶70
 These statements of legislative purpose show that the 2022
 amendments establishing the position of a CFY were intended
 to increase the rights and voices of children, and
 especially children over twelve, who were given the right to
 attorneys who were required to consider their views before
 taking positions in court. Id. The position taken by
 Father and the Department and the majority's ruling,
 however, dramatically limit children's voices in
 dependency and neglect proceedings. I perceive no basis in
 the statutory text or in the statement of legislative purpose
 to justify such a conclusion. To the contrary, in limiting
 the rights of a youth, the majority appears to be adopting
 its own policy preference over that of the legislature.
 
 36
 
          ¶71
 Lastly, notwithstanding the concerns expressed by Father and
 the Department that if a CFY can object to a motion to
 dismiss filed by the Department, then children would
 effectively be able to "divorce" their own parents
 (a concern that the majority essentially adopts, see
 Maj. op. ¶ 24), for several reasons, I perceive no cause
 for concern. First, my understanding of the law retains the
 substantial oversight that the Children's Code affords
 the juvenile court. Accordingly, that court would stand as a
 bulwark against a twelve-year-old child and a CFY who might
 seek to take unreasonable positions, and the court would
 remain the ultimate arbiter of what is in the child's
 best interests, even if the court's determination is
 contrary to what the child might desire. Second, although a
 CFY performs a more traditional client-directed role as
 counsel for a youth, the CFY still has ethical obligations to
 the court, and I have every confidence that counsel who serve
 in this role will honor their obligations and refrain from
 taking, for example, frivolous positions, merely because a
 youth has asked them to do so.
 
 
          III.
 Conclusion
 
 
          ¶72
 Because I believe that (1) the majority's conclusion is
 inconsistent with the text and purposes of the Children's
 Code and is contrary to the legislature's intent in
 establishing the CFY role; (2) the majority overrules without
 legitimate reason longstanding precedent that has well served
 the interests of children in this state for almost four
 decades; and (3) the procedure employed by the juvenile court
 here
 
 37
 
 was consistent with the text and purposes of the Code, I
 would discharge our order to show cause.
 
 
          ¶73
 Accordingly, I respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] A dependency and neglect proceeding is
 civil, not criminal, in nature. We nonetheless adhere to the
 parties' and amici's use of the generic term
 "prosecute" in their briefing to mean to
 "institute" or to "pursue" the legal
 proceeding.
 
 
 [2] In the meantime, R.M.P.'s sister
 had been successfully reunited with father in November 2024.
 The guardian ad litem for R.M.P.'s sister agreed it was
 in the child's best interest to be dismissed from the
 case and returned to father's custody.
 
 
 [3] In response to R.M.P.'s motion,
 the juvenile court set a placement hearing for June 2, 2025.
 Father filed an emergency motion in this court, arguing that
 setting this hearing violated our order staying proceedings,
 which issued when we ordered the parties to show cause.
 Father's emergency motion asked us to vacate all upcoming
 hearings in the juvenile court and to stay all motion
 deadlines. We granted father's motion, indicating that we
 anticipated issuing this opinion by June 2.
 
 
 [4] Notably, the division also reasoned
 that it was unclear from the record what the State meant when
 it requested dismissal on the grounds that "all matters
 concerning the child could be handled in the domestic
 action." R.E., 729 P.2d at 1034. The
 division observed that a district court in a dissolution of
 marriage action lacks jurisdiction to declare a child
 dependent or neglected, meaning that the dependency and
 neglect petition could not be resolved in the dissolution
 proceedings. Id. Alternatively, the division noted,
 if the real issue was a dispute between the parents over
 custody, such a dispute could be resolved in the dissolution
 proceedings. Id. The division thus remanded and
 directed the district court to "clarify what matters
 need[ed] to be resolved" and whether jurisdiction was
 proper in the juvenile court or district court.
 Id.
 
 
 ---------