The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 26, 2026

**2026COA21**

**No. 25CA1468, *People in Interest of M.M.F.* — Juvenile Court — Dependency and Neglect — Deferred Adjudication — Order of Dismissal — Standing — Non-State Parties in Dependency and Neglect Proceedings; Appeals — Final Appealable Order**

A division of the court of appeals determines that a juvenile court's order of dismissal in a dependency and neglect case constitutes a final, appealable order. The division also determines that *People in Interest of R.M.P.*, 2025 CO 34, prevents a youth, through a counsel for youth, from pursuing an adjudication judgment following a period of deferred adjudication under section 19-3-505(5), C.R.S. 2025.

COLORADO COURT OF APPEALS                                    **2026COA21**

Court of Appeals No. 25CA1468
City and County of Denver Juvenile Court No. 24JV30248
Honorable Lisa Gomez, Judge

The People of the State of Colorado,

Appellee,

In the Interest of M.M.F., a/k/a R.F., a Child,

Child-Appellant,

and Concerning M.M.S. and M.F.F.,

Appellees.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

Announced March 26, 2026

Miko Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver,
Colorado, for Appellee

Josi McCauley, Counsel for Youth, Superior, Colorado, for M.M.F., a/k/a R.F.

Genevieve Manco, Office of Respondent Parents' Counsel, Thornton, Colorado,
for Appellee M.M.S.

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado,
for Appellee M.F.F.

¶ 1     In this dependency and neglect case, after the parties agreed to a deferred adjudication under section 19-3-505(5), C.R.S. 2025, the juvenile court dismissed the case at the request of Denver Human Services (the Department) and over the objection of M.M.F., a/k/a R.F. (the youth), who was represented by a counsel for youth (CFY).  In doing so, the court relied on the supreme court's opinion in *People in Interest of R.M.P.*, 2025 CO 34.  The *R.M.P.* court held, among other things, that a child, through a CFY, lacks standing to continue pursuing a petition in dependency and neglect after the State decides to dismiss it.

¶ 2     This appeal requires us to resolve two questions.  First, did the juvenile court's order of dismissal constitute a final, appealable order?  And second, does *R.M.P.* also preclude a youth, through a CFY, from pursuing an adjudication judgment following a period of deferred adjudication?  We conclude that the answer to both questions is yes.  We therefore affirm the juvenile court's dismissal of this dependency and neglect case at the Department's request.

## I.     Background

¶ 3     In January 2024, the Department filed a petition in dependency and neglect after it received a referral from the juvenile

1

court to investigate the youth's truancy case. The Department alleged, among other things, that M.M.S. (mother) had left a treatment facility for fentanyl dependence and that the youth had mental health issues the parents couldn't adequately address. M.F.F. (father) didn't reside with the family.

¶ 4    In July 2024, the parents made no-fault admissions to the petition and agreed to deferred adjudications under section 19-3-505(5). Ten months later, the Department informed the juvenile court that it wanted to dismiss the petition and close the case because it had no ongoing safety concerns. The CFY objected to dismissal, asserting, among other things, that the parents weren't yet adequately addressing the youth's mental health needs. The parents argued that the CFY didn't have the "ability to prosecute a case that the Department d[id] not wish to keep open."

¶ 5    The juvenile court noted that a similar question was "currently pending before the Colorado Supreme Court with respect to the ability of the CFY to prosecute a case." But the court noted that the case law at the time allowed a guardian ad litem (GAL) to "object[] to the closure of a case" and required the court to "hold a hearing to determine whether or not the case should remain open." In light of

the pending supreme court decision, the parties agreed to keep the case open, and the court determined that, for the time being, the CFY had "standing to object to the case closure."

¶ 6    Shortly after the hearing, the supreme court announced its decision in *R.M.P.*, 2025 CO 34. In that case, after the department filed a petition in dependency and neglect, but before an adjudication was entered, the department moved to dismiss the case. *Id.* at ¶¶ 6-7. R.M.P., through his appointed CFY, objected to the dismissal and asked the juvenile court to hold a hearing to determine whether there was credible evidence to proceed to an adjudicatory hearing. *Id.* at ¶ 10. The court agreed, determined that credible evidence existed to justify an adjudicatory hearing, and set the matter for a hearing. *Id.* at ¶ 11. The father and the department sought relief from the supreme court under C.A.R. 21. *R.M.P.*, ¶ 12. On review, the supreme court held that "the State, in its role as *parens patriae*, is the sole party that may prosecute dependency and neglect proceedings." *Id.* at ¶ 4. As a result, the supreme court determined that R.M.P. couldn't "prosecute the petition in dependency and neglect when the State ha[d] determined that the petition should be dismissed." *Id.* at ¶ 5.

3

¶ 7      At the next hearing in the present case, the Department again informed the juvenile court that it wished to dismiss the petition, and the parents argued that *R.M.P.* required dismissal. The CFY objected to dismissal and asserted that the present case was distinguishable from *R.M.P.* because the court had already made a finding that the youth in this case was dependent and neglected. The CFY therefore argued that the youth had standing to file a motion to revoke the deferred adjudication. The court read *R.M.P.* to hold that, "prior to [an] adjudication[] entering[,] . . . the Department of Human Services has the authority to dismiss a petition outright." Because an adjudication hadn't yet entered, the court determined that the CFY lacked standing to object to the dismissal. The court therefore granted the Department's request to dismiss the case.

## II.    Finality

¶ 8      Shortly after the youth filed his appeal, this court ordered him to show cause why the appeal shouldn't be dismissed based on the lack of a final, appealable order. Following the youth's response, a motions division of this court deferred the matter to the merits

4

division.  Now considering the merits, we conclude that the juvenile court's decision dismissing the petition is a final, appealable order.

¶ 9      Our jurisdiction is limited to the review of final, appealable judgments or orders.  *People in Interest of S.C.*, 2020 COA 95, ¶ 6; C.A.R. 1(a).  An order is final if it ends the action, leaving nothing further to be done to determine the parties' rights.  *People in Interest of M.R.M.*, 2021 COA 22, ¶ 13.  A final, appealable order is one that prevents further proceedings or effectively terminates the proceedings.  *S.C.*, ¶ 6.

¶ 10     In general, an order dismissing a case without prejudice isn't a final order.  *Id.* at ¶ 8.  But when "the circumstances of the case indicate that the action cannot be saved and that the district court's order precludes further proceedings, dismissal without prejudice qualifies as a final judgment for the purposes of appeal."  *Avicanna Inc. v. Mewhinney*, 2019 COA 129, ¶ 1 n.1.

¶ 11     The youth asserts that, although the Department could file a new case with the same family, the new case would necessarily require the Department to make new allegations and therefore wouldn't involve simply refiling the same petition.  Thus, says the

youth, the order of dismissal in this case is unlike a dismissal without prejudice in a general civil or criminal case.

¶ 12     We agree with the youth that the Department can't simply refile the same petition. *See People in Interest of D.L.E.*, 645 P.2d 271, 273-74 (Colo. 1982) (noting that the doctrines of claim preclusion and issue preclusion require that a second petition raise new allegations). Given this, the juvenile court's dismissal order ended the action, leaving nothing further for the court to do to determine the parties' rights. The dismissal order therefore constitutes a final, appealable order. *See M.R.M.*, ¶ 13.

¶ 13     We recognize that a division of this court, in *People in Interest of C.S.*, 2017 COA 96, ¶ 15, determined that a juvenile court's "order granting the parties' voluntary dismissal of the petition in dependency and neglect is not final and appealable." But we decline to follow *C.S.* because, in our view, that portion of *C.S.* is no longer good law. *See Chavez v. Chavez*, 2020 COA 70, ¶ 13 (noting that a division of the court of appeals isn't bound by the decisions of other divisions).

¶ 14     In *C.S.*, ¶¶ 22-23, the division relied on language in section 19-1-109(2)(c), C.R.S. 2025, and the interpretation of that language

in *People in Interest of S.M-L.*, 2016 COA 173, *aff'd on other grounds sub nom.*, *People in Interest of R.S. v. G.S.*, 2018 CO 31, to determine that the dismissal order wasn't final and appealable. Section 19-1-109(2)(c) provides that "[a]n order decreeing a child to be neglected or dependent shall be a final and appealable order." The *S.M-L.* division reasoned that, because the language in section 19-1-109(2)(c) didn't also include corresponding "language permitting an appeal from a 'no adjudication' finding, . . . the legislature did not intend for such determinations to be final appealable orders." *S.M-L.*, ¶ 19.

¶ 15    On review, the supreme court disagreed with that portion of the *S.M-L.* division's reasoning, concluding that the legislature intended section 19-1-109(2)(c) as an exception to the general rule of finality. *R.S.*, ¶ 20. In other words, the supreme court determined that a "no adjudication" finding could be final if it otherwise satisfied the general rule of finality. *See id.* at ¶ 38.

¶ 16    In sum, the legal authority on which the *C.S.* division relied has since been overturned. And because the juvenile court's order dismissing the instant case satisfies the general rule of finality, as

described above, we conclude the order is final and appealable.  *See R.S.*, ¶ 20; *S.C.*, ¶ 10.

### III.   Standing

¶ 17    Now turning to the core issue of the youth's standing, we conclude that the juvenile court properly dismissed the case because, under *R.M.P.*, the youth didn't have standing to prosecute a motion to revoke the deferred adjudication.

¶ 18    "[W]hether a non-state party can prosecute a dependency and neglect petition ultimately presents an issue of standing, which implicates the juvenile court's jurisdiction to proceed and thus may be raised at any time."  *R.M.P.*, ¶ 18.  We review standing issues de novo.  *Id.*

¶ 19    In dependency and neglect proceedings, the State, through the county department of human services, is the only party that may file a petition in dependency and neglect.  *McCall v. Dist. Ct.*, 651 P.2d 392, 394 (Colo. 1982).  The filing of the petition begins the first phase of a dependency and neglect proceeding, in which "the court determines if there are grounds to adjudicate the child dependent and neglected."  *E.O. v. People in Interest of C.O.A.*, 854 P.2d 797, 800 (Colo. 1993).

8

¶ 20    The Colorado Children's Code contemplates two procedures to

reach the end of the first phase:

(1)    The standard procedure requires the department to prove

the allegations in the petition by a preponderance of the

evidence at an evidentiary hearing, *see* § 19-3-505(1), or,

in the alternative, a parent may waive their right to a

hearing and admit the allegations, *see People in Interest

of N.G.*, 2012 COA 131, ¶ 19.  If the department proves

the allegations or the parent admits them, the juvenile

court will sustain the petition and enter an order of

adjudication.  *See* § 19-3-505(7)(a).

(2)    The deferred adjudication procedure, by contrast, allows

the juvenile court to "continue" the adjudicatory hearing

"from time to time" for up to twelve months *after* the

court finds that the allegations are supported by a

preponderance of the evidence but *before* entry of an

adjudication order.  § 19-3-505(5).  At the end of the

twelve-month period, "the petition shall either be

dismissed or sustained."  § 19-3-505(5)(b).

¶ 21    As relevant here, the two procedures differ only in the timing of entering the formal adjudication order: In the standard procedure, the court enters the order at the conclusion of the hearing, but in the deferred adjudication procedure, the court can delay entering the order for up to twelve months to provide the parent with additional time to demonstrate compliance with the conditions of the deferral.

¶ 22    The youth asserts that the present case is distinct from *R.M.P.* because of the deferred adjudication procedure.  But the youth doesn't argue that he had standing to prosecute the petition through a motion to revoke the deferred adjudication.  *See* C.R.J.P. 4.18(f) (describing the procedure a court must follow when a party files a motion to revoke).  In fact, despite his assertion in the juvenile court that he had authority to file such a motion notwithstanding the supreme court's holding in *R.M.P.*, the youth now submits that he isn't asking "to assume the role of the State."

¶ 23    Instead, the youth maintains that the juvenile court had the authority to enter an adjudication over the Department's motion to dismiss without any action on his part.  Practically speaking, this can't be so.  In *N.G.,* ¶ 23, a division of this court determined that a

parent subject to a motion to revoke a deferred adjudication is entitled to a hearing, upon request, for the court to "reconsider[] the child's status before entering the adjudicatory order." Put differently, for the court to enter an adjudication in this case, it would have first been required to afford the parents an opportunity to present new evidence at a hearing regarding the youth's current status. *Id.* at ¶¶ 25-27; *see also* C.R.J.P. 4.18(f)(1) (requiring the court to hold a hearing on a pending motion to revoke *before* entering an adjudication).

¶ 24 But because the Department didn't believe that an adjudication should enter, it declined to prosecute a motion to revoke. And the only party willing to prosecute a revocation motion — the youth — didn't have standing to do so. Nor could the court pick up the prosecutorial mantle. *See Dep't of Nat. Res. v. 5 Star Feedlot, Inc.*, 2021 CO 27, ¶ 39 n.15 ("[The] adversarial system of justice . . . puts the onus on the parties to frame the issues to be decided while assigning to courts the role of neutral arbiters of the matters raised by the parties.").

¶ 25 At bottom, we agree with the juvenile court that it lacked authority to keep the case open over the Department's motion to

dismiss. *See R.M.P.*, ¶ 32 ("[T]he juvenile court should have granted the Department's motion to dismiss the petition in dependency and neglect."); *see also People in Interest of N.K.S.*, 2025 COA 100, ¶ 7 ("[T]he supreme court determined that a 'non-state party,' such as a GAL or [CFY], does not have standing to prosecute a dependency and neglect petition when 'the State has determined that the petition should be dismissed.'" (quoting *R.M.P.*, ¶¶ 3, 33)). The ultimate question in a deferred adjudication is no different than in the standard procedure: whether the court will sustain the petition. *See* § 19-3-505(5)(b), (7)(a). Given this overlap, for the court to enter an adjudication following the deferred period, the State must be willing to prosecute the petition through a motion to revoke. *See R.M.P.*, ¶ 33. The Department was unwilling to do so here, and the youth lacked standing to assume the Department's prosecutorial role. *See id.*

¶ 26    We therefore conclude that any distinction between *R.M.P.* and the present case based on the deferred adjudication procedure didn't confer standing on the youth to prosecute the petition. Because *R.M.P.* controls, we affirm the dismissal order. *See N.K.S.*, ¶ 11 ("We are bound by holdings of the Colorado Supreme Court.").

12

## IV. Other Contentions

¶ 27 The youth also raises other arguments challenging the juvenile court's dismissal order that don't directly implicate issues of subject matter jurisdiction. The youth asserts, for example, that the court violated his "right to have an adjudication made either dismissing or sustaining the petition" under section 19-3-505(5)(a) and that the Department couldn't unilaterally void the deferred adjudication agreement by asking to dismiss the case.

¶ 28 Because these arguments don't implicate subject matter jurisdiction, the youth needed to raise them in the juvenile court. *See R.M.P.,* ¶ 18. He didn't. Rather, he asserted only that the present case was distinguishable from *R.M.P.* and that he therefore had standing to move to revoke the deferred adjudication. As a result, we decline to address these issues for the first time on appeal. *See People in Interest of M.B.,* 2020 COA 13, ¶ 14 ("[E]xcept where jurisdiction is implicated, generally appellate courts review only issues presented to and ruled on by the lower court.").

## V. Disposition

¶ 29 We affirm the judgment.

JUDGE FOX and JUDGE KUHN concur.